# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JAN 2 3 2006
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PRAECOMM, INC d/b/a/ AMERICAN RADIO<br><br>6310 Riverdale Street<br>San Diego, Ca 92120<br><br>Plaintiff,<br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | 06-54 C<br>Civil Action No.________ |

## COMPLAINT

For its Complaint against Defendant United States of America (hereinafter the "Government" or "Iraq Project and Contracting Office" or "PCO" "United States Army Corps of Engineers"), Plaintiff PraeComm, Inc. (hereinafter "PraeComm" or "American Radio"), by counsel, states as follows:

## NATURE OF THIS ACTION

1. This is an action for breach of contract and breach of duty of good faith and fair dealing. PraeComm's claims are based upon Government representations and written contracts with the United States, Army Corps. of Engineers and the Project and Contracting Office ("PCO") in Iraq under which PraeComm agreed to supply First Responder Network ("FRN") equipment for installation in contractually identified Iraq cities. PraeComm complied with the terms of its contracts by supplying the PCO with FRN equipment for installation in the

contractually identified Iraq cities. Subsequently, the PCO stated that it was unilaterally changing the contractually identified Iraq cities in which PraeComm's FRN equipment would be installed. These actions by the PCO constitute an anticipatory breach of PraeComm's contracts, a unilateral constructive change of PraeComm's contracts, and a breach of the Government's duty of good faith and fair dealing of PraeComm's contracts.

2. For relief, PraeComm seeks damages or restitution to compensate it in the sums of $ 14,456,879 and $3,517,402.29 plus interest, and attorney's fees in the amount to be proved, for the Government's wrongful acts.

**SUMMARY OF CLAIMS**

3. The Government's absolute, definite, unconditional and unequivocal manifestation to refuse to perform Contract No. W914NS-050F-9001 ("Contract 9001") (SEE LETTER TO THOMAS ZUBEL, TAB A, EXHIBIT 2) constituted an anticipatory breach of Contract 9001. PraeComm was financially injured by the PCO's anticipatory breach of Contract 9001, and the PCO's anticipatory repudiation of Contract 9001 was the proximate cause of the PraeComm's injury.

4. The Government's absolute, definite, unconditional and unequivocal manifestation to refuse to perform Contract No. W914NS-05-F-9027 ("Contract 9027") (SEE LETTER TO THOMAS ZUBEL, TAB A, EXHIBIT 4) constituted an anticipatory breach of Contract 9027. PraeComm was financially injured by the PCO's anticipatory breach of Contract 9027, and the PCO's anticipatory repudiation of Contract 9027 was the proximate cause of the PraeComm's injury.

5. The Government's statements regarding its decision not to install PraeComm's FRN equipment in the Government represented and contractually identified major

Iraq cities under Contract 9001, the Government's decision to contract with Lucent Technologies ("Lucent") to install Lucent's Advanced First Responder Network ("AFRN") equipment in the major Iraqi cities represented by the Government and contractually identified under Contract 9001, the fact that PraeComm objected to the Government's decision not to install PraeComm's FRN equipment in these Iraqi cities designated under Contract 9001, and the damages incurred by PraeComm as a result of the PCO's decision constitute a constructive unilateral change by the Government to Contract 9001.

6. The Government's statements regarding its decision not to install PraeComm's FRN equipment in the Government represented and contractually identified major Iraq cities under Contract 9027, the Government's decision to contract with Lucent to install Lucent's AFRN equipment in the major Iraqi cities represented by the Government and contractually identified under Contract 9027, the fact that PraeComm objected to the Government's decision not to install PraeComm's FRN equipment in these major Iraqi cities contractually agreed upon and specifically identified in Contract 9027, and the damages incurred by PraeComm as a result of the PCO's decision constitute a constructive unilateral change by the Government to Contract 9027.

7. The Government breached its duty of good faith and fair dealing on Contract 9001 by misrepresenting to PraeComm that its FRN equipment would be installed in major Iraq cities as represented by the Government and contractually identified in Contract 9001. PraeComm relied upon the Government's representations and the terms of Contract 9001 regarding the specific major Iraq cities in which PraeComm's FRN equipment would be installed by offering discounted pricing to the Government under Contract 9001. After PraeComm's performance of Contract 9001, the Government informed PraeComm that its FRN equipment

would not be installed in the Iraq cities specified under Contract 9001. PraeComm would not have offered discounted pricing to the Government under Contract 9001 if PraeComm's FRN equipment was not going to be installed in the Government represented and contractually identified major Iraq cities listed in Contract 9001.

8. The Government breached its duty of good faith and fair dealing on Contract 9027 by misrepresenting to PraeComm that its FRN equipment would be installed in major Iraq cities as represented by the Government and contractually identified in Contract 9027, as modified. PraeComm relied on the Government's representations and the terms of Contract 9027, as modified, regarding the specific major Iraq cities which PraeComm's FRN equipment would be installed by offering discounted pricing to the Government under Contract 9027. After PraeComm's performance of Contract 9027, the Government informed PraeComm that its FRN equipment would not be installed in the major Iraqi cities specified under Contract 9017, as modified. PraeComm would not have offered discounted pricing to the Government under Contract 9027, as modified, if PraeComm's FRN equipment was not going to be installed in the Government represented and contractually identified major Iraq cities listed in Contract 9027, as modified.

## PARTIES

9. PraeComm, Inc.(hereinafter "PraeComm" or "American Radio" or "Plaintiff"), plaintiff in this matter, is, and at all times pertinent hereto, was a California Corporation. PraeComm's principle place of business is located in San Diego, California

10. The United States of America (hereinafter the "Government" or "Iraq Project and Contracting Office" or "PCO" "United States Army Corps of Engineers"), is named as defendant in this action. At all times pertinent to the allegations set forth herein, the United

States acted through its instrumentalities, agencies, and duly authorized officers and employees, including, but not limited to, the Iraq Project and Contracting Office, and the United States Army Corps of Engineers.

## JURISDICTION AND VENUE

11. This Court has jurisdiction and venue over this action pursuant to 28 U.S.C. § 1491(a)(1) and 41 U.S.C. § 609(a)(1).

## FACTS

12. PraeComm, is a company engaged in the manufacture and distribution of radio communication network equipment for both the public and private sector.

13. On or about October 12, 2003, the CPA authorized a reprogramming action on the Iraqi police, fire, ambulance and Civil Defense Services communications in the amount of $12 Million. The Program Review Board Allocation Request #32, granted the Ministry of Interior $12 Million for the purchase of Iraqi police handheld radios.

14. On or about October 23, 2003, CPA Contracting Officer Frank V. Sharshel, issued an RFP for police handheld radios for use in Iraq.

15. On or about December 17, 2003, PraeComm and the PCO executed Contract DABV01-03-C-0032 ("Contract 0032") in the amount of $5,957,380.

16. Under Contract 0032, PraeComm provided a UHF radio system to 83 cities (in 17 Governates) in Iraq.

17. On or about October 2004, the PCO represented to PraeComm that it wanted to install PraeComm's FRN equipment (i.e., trunked radio system) in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala. This decision was made for two

reasons(1) PraeComm had already supplied equipment in these cities as part of Contract 0032 and (2) because the AFRN equipment provided by Lucent could not be installed quickly enough to meet the PCO's needs in these major Iraq cities.

18. The PCO sought from PraeComm an FRN communication solution for the four major specified Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala within the limited budget that was available to the Government at that time. Further, the Government represented to PraeComm that future Iraq cities would be set up with PraeComm FRN communications solution / equipment when additional Government funding became available.

19. Based on the Government's representation that PraeComm's FRN would be installed in the four specified major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala; based on the fact that Contract 9001 identified Ad Diwaniyah, An Najaf, Al Hillah and Karbala as Iraq cities for installation of PraeComm's equipment, PraeComm offered its FRN equipment at pricing which was discounted from PraeComm's standard commercial pricing.

20. The FRN equipment offered by PraeComm to PCO for installation in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala included equipment which was unique to PraeComm's design.

21. On or about October 14, 2004, PraeComm and the PCO executed Contract 9001.

22. Contract 9001 provided for installation of PraeComm's FRN equipment in the four major specified Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala.

23. Contract 9001 included pricing which was discounted from PraeComm's standard commercial pricing.

24. The Government knew or should have known that in offering discounted pricing under Contract 9001, PraeComm was relying upon the fact that (1) the Government represented and Contract 9001 identified that PraeComm's FRN equipment would be installed in the four major specified Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala as Iraqi cities for installation of PraeComm's FRN equipment; and (2) the FRN equipment being offered to PCO under Contract 9001 by PraeComm included equipment which was unique to PraeComm's design.

25. On or about November 2004, the PCO again approached PraeComm regarding the supplying and installing of FRN equipment in the specified Iraq cities of: Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Al Huwayjah, Altun Kupri, Daquq, Dibs, Layan, Ryad, Abbasiyah, Tikrit and Ramadi.

26. Seven of these Iraq cities (Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit and Ramadi)are considered major Iraq cities and seven of these Iraq cities (Al Huwayjah, Altun Kupri, Daquq, Dibs, Layan, Ryad and Abbasiyah) are considered minor Iraq cities.

27. Based on the Government's representation that PraeComm's FRN equipment would be installed in the specified major Iraq cities of Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit and Ramadi, PraeComm offered its FRN equipment at pricing discounted from PraeComm's standard commercial pricing.

28. The FRN equipment offered by PraeComm to PCO for installation in the specified Iraq cities of Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Al Huwayjah, Altun Kupri, Daquq, Dibs, Layan, Ryad, Abbasiyah, Tikrit and Ramadi was unique to PraeComm's design.

29. The PCO and Army Corps of Engineers knew or should have known that PreaComm's discounted pricing was being offered to the Government because installation of PraeComm's FRN equipment in the specified Iraq cities that are considered major Iraq cities (Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit and Ramadi) would mean that all follow on contracts related to FRN equipment installed in those specified major Iraq cities would be awarded to PraeComm because PraeComm's FRN equipment which was unique to PraeComm's design.

30. The Government represented to PraeComm that the installation of PraeComm's FRN equipment constituted a "long-term," AFRN replacement solution in Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit and Ramadi and that AFRN would be scaled back further and that a contract modification adding additional major cities would be forthcoming.

31. On or about December 6, 2004, PraeComm and the PCO executed Contract 9027. The US Army Corps of Engineers was responsible for payment.

32. Contract 9027 identified Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Al Huwayjah, Altun Kupri, Daquq, Dibs, Layan, Ryad, Abbasiyah, Tikrit and Ramadi as Iraq cities for installation of PraeComm's FRN equipment.

33. Contract 9027 stated: "The Purpose of this effort is to convert radio systems in 12 cities from standard analog to trunked radio systems thereby supporting the expansion of the IPS to 145,000."

34. Contract 9027 also stated "Over the past year, the coalition has installed [PraeComm, Inc.] analog radio systems in a number of cities in Iraq to support the Iraqi Police Service. These radio systems were originally designed to provide initial support for a force of

85,000 officers. The radios were to be replaced in June 2004 with the Advanced First Responder Network. That network has been delayed and descaled to the point where it will cover fewer cities and not be in place until June 2005. As a result of the police force expansion to 135,000 officers, the current radio systems will not be sufficient to support the expanded requirements. Additionally, the system will need to become a long term solution given that the AFRN will not be put into many cities. The solution is to upgrade the existing analog system to a trunked radio network."

35. Contract 9027 included pricing which was discounted from PraeComm's standard commercial pricing.

36. The discounted pricing offered by PraeComm to the PCO under Contract 9027 was based upon the PCO's representation that PraeComm's FRN equipment would be installed in the specified major Iraq cities of Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit and Ramadi and the fact that Contract 9027 identified Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit and Ramadi as Iraq cities for installation of PraeComm's equipment.

37. The discounted pricing offered by PraeComm to the PCO under Contract 9027 was based upon the fact that the FRN equipment offered by PraeComm to PCO for installation in the identified major Iraq cities of Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit and Ramadi included equipment which was unique to PraeComm's design.

38. The discounted pricing offered by PraeComm to the PCO under Contract 9027 was based upon the PCO's representation that the AFRN equipment had been delayed and descaled to the point where it will cover fewer cities and not be in place until June 2005.

39. The discounted pricing offered by PraeComm to the PCO under Contract 9027 was also based upon the PCO's representation that PraeComm's FRN equipment would need to become a long term solution given that the AFRN equipment would be installed in fewer Iraq cities.

40. The Government knew or should have known that in offering discounted pricing under Contract 9027, PraeComm was relying upon the PCO's representations and the terms of Contract 9027 that: (1) PraeComm's FRN equipment would be installed in the identified major Iraq cities of Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit and Ramadi; (2) the FRN equipment offered by PraeComm to PCO for installation in the specified major Iraq cities of Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit and Ramadi was unique to PraeComm's design; (3) the PCO's representation that the AFRN equipment had been delayed and descaled to the point where it will cover fewer cities and not be in place until June 2005; (4) the PCO's representation that PraeComm's FRN equipment would need to become a long term solution given that the AFRN equipment would put in fewer Iraq cities and that FRN was to upgrade the existing analog system to a trunked radio network.

41. PraeComm diligently performed Contracts 9001 and 9027. The Lucent AFRN communications solution for Iraq continued to experience delays.

42. Faced with delays in the installation of Lucent's AFRN equipment in Iraq, the PCO determined on or about January 2005 that it was necessary to install PraeComm's FRN equipment in the six additional major Iraq cities of Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah.

43. On or about January 28, 2005, the PCO issued Modification P0001 to Contract 9027 ("MOD 1"), substituting the Iraq cities of Al Huwayjah, Altun Kupri, Daquq,

Dibs, Layan, Ryad and Abbasiyah originally listed in Contract 9027 with the new major Iraq cities of Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah.

44. Based on the Government's representation that PraeComm's FRN equipment would be installed in the major Iraq cities of Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah, PraeComm offered the FRN equipment to the Government under MOD 1 at pricing which was discounted from PraeComm's standard commercial pricing.

45. The discounted pricing offered by PraeComm to the PCO under MOD 1 was based upon the fact that the FRN equipment offered by PraeComm to PCO for installation in the Government represented and contractually identified major Iraq cities of Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah was unique to PraeComm's design.

46. PraeComm informed the PCO that PraeComm was offering the PCO discounted pricing because MOD 1 included installation of PraeComm's FRN equipment in the major Iraq cities of Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah.

47. On or about January 28, 2005, executed MOD 1 to Contract 9027.

48. MOD 1 to Contract 9027 provided for installation of PraeComm's FRN equipment in the Government represented and contractually identified major Iraq cities of Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah.[1]

49. MOD 1 to Contract 9027 included pricing which was discounted from PraeComm's standard commercial pricing.

---

[1] As modified, the major cities included in Contract 9027 were: Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah, As Samawah, Samarra, Kirkuk, As Sulaymaniyah, Al Kut, and Al Fallujah.

50. The Government knew or should have known that in offering discounted pricing under MOD 1 to Contract 9027, PraeComm was relying upon the representations by the Government and the fact that MOD 1 to Contract 9027 (1) identified the major Iraq cities of Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah, as Iraq cities for installation of PraeComm's FRN equipment; and (2) the fact that the FRN equipment offered by PraeComm to PCO for installation in the contractually agreed upon and identified Iraq cities of Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah included equipment which was unique to PraeComm's design.

51. On or about March 2005 PraeComm was informed by PCO's Major Robert Sile, CPATT C-6 and First Lt. Andrew Radano that PraeComm's FRN system would now be installed in only 5 of the 17 major Iraq cities represented by the Government and contractually identified by the PCO in Contract 9001 and Contract 9027, as modified, and that Lucent's AFRN system would be instead installed in the twelve of the major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah, As Samawah, Ad Diwaniyah, An Najaf, Al Hillah, and Karbala, represented by the Government and contractually identified in PraeComm's Contract 9001 and Contract 9027, as modified.

52. On or about March 2005 the PCO's Major Siles explained to PraeComm that the Government's reason for removing the twelve major Iraq cities specifically identified in Contracts 9001 and Contract 9027, as modified, was because the PCO wanted to overlap Lucent AFRN equipment and PraeComm FRN equipment contracts so that two systems would not be set up in the same city.

53. Based upon information and belief, PraeComm has subsequently learned that the PCO's reason for removing the twelve major Iraq cities agreed upon by PraeComm and

PCO under Contracts 9001 and 9027, as modified, as cities for the installation of PraeComm's FRN equipment, was not the reason stated by PCO's Major Siles and First Lt. Radano on or about March 2005.

54. Based upon information and belief, PraeComm has subsequently learned that the PCO's reason for removing 12 of the major Iraq cities specifically identified in Contracts 9001 and 9027, as modified, as cities for the installation of PraeComm's FRN equipment, was because of the resolution of an underlining dispute between U.S. Deputy Undersecretary for International Technology Security Jack Shaw and CPA Senior Adviser For Communications, Dan Sudnick regarding the installation of Lucent's AFRN equipment in Iraq.

55. Based upon information and belief, PraeComm has subsequently learned that the underlining dispute between U.S. Deputy Undersecretary Shaw and CPA Senior Adviser Sudnick regarding the installation of Lucent's AFRN equipment in Iraq was resolved by the departure of U.S. Deputy Undersecretary Shaw and the replacing of CPA Senior Adviser Sudnick with Dr. Arno Kosko.

56. Based upon information and belief, PraeComm has subsequently learned that the PCO's reason for removing 12 of the major Iraq cities specifically identified in Contracts 9001 and 9027, as modified, as cities for the installation of PraeComm's FRN equipment, was because the PCO, through Dr. Kosko, preferred the installation of Lucent's AFRN equipment in those 12 major Iraq cities instead of the PraeComm's FRN equipment.

**PLAINTIFF'S EXHAUSTION OF ADMINISTRATIVE REMEDIES**

57. Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 56 of this Complaint as if herein at length set forth.

58. Pursuant to the disputes clauses of Contract 9001 and 9027, on or about November 8, 2005, PraeComm submitted a certified claim to PCO Contracting Officer Thomas Zubel arguing (1) PCO Changed the Contractually Specified Cities in PraeComm's contracts; (2) PraeComm Relied on the PCO's representations as well as the terms of Contract 9001 and Contract 9027; (3) the Government breached its duty of good faith and fair dealing. PraeComm requested a written final decision of the contracting officer pursuant to 41 U.S.C.§ 605.(SEE LETTER TO THOMAS ZUBEL, TAB A)

59. On November 13, 2005, Mr. Zubel informed PraeComm that MSgt Anita S. Jackson was the new Contracting Officer for Contract 9001 and Contract 9027, as modified, and would be reviewing PraeComm's November 8, 2005 certified claim.

60. As of the date of the filing of this Complaint, the PCO has not provided PraeComm with a written decision in response to PraeComm's November 8, 2005 certified claim, despite 41. U.S.C. § 605 (c) requiring that the PCO Contracting Officer issue a written final decision within 60 days of receipt of PraeComm's November 8, 2005 certified claim.

61. As specified in 41 U.S.C. § 605(c)(5), "if a contracting officer fails to issue a final decision in a timely manner, the contractor's claim will be 'deemed' denied, and the contractor may seek relief from such deemed denial." United Partition, 59 Fed.Cl. at 634 (citing Case, Inc. v. United States, 88 F.3d 1004, 1008-09 (Fed.Cir.1996); Southern Cal. Edison v. United States, 58 Fed.Cl. 313, 320 (2003); Claude E. Atkins Enters. v. United States, 27 Fed.Cl. 142, 143-44 (1992)).

## COUNTS

## COUNT I

(Anticipatory Breach of Contract 9001)

62. Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 61 of this Complaint as if herein at length set forth.

63. On or about March 2005, the PCO expressed an absolute, definite, unconditional and unequivocal manifestation to refuse to perform Contract 9001 by not installing PraeComm's FRN equipment in the specified major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala as represented by the Government and contractually identified in Contract 9001.

64. Based upon information and belief, the PCO contracted with Lucent for the installation of Lucent's AFRN equipment in major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala which were represented by the Government and contractually identified in Contract 9001 as the locations where PraeComm's FRN equipment was to be installed.

65. The PCO's March 2005 expressed, absolute, definite, unconditional and unequivocal manifestation to refuse to perform Contract 9001 by not installing PraeComm's FRN equipment in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala as represented by the Government and contractually identified in Contract 9001 constituted an anticipatory breach of Contract 9001 by the Government.

66. The PCO's decision to contract with Lucent for the installation of Lucent's AFRN equipment in major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala as represented by the Government and contractually identified in Contract 9001 as the

location for the installation of PraeComm's FRN equipment constituted reasonable grounds for PraeComm to treat the Government's actions as an anticipatory breach of Contract 9001.

67. PraeComm was financially harmed by the PCO's anticipatory breach of Contract 9001 because PraeComm's discounted pricing was based upon the facts that (1) representations by the Government and that Contract 9001 listed the four major specified Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala as Iraq cities for installation of PraeComm's FRN equipment; and (2) the FRN equipment being offered to PCO under Contract 9001 by PraeComm included equipment which was unique to PraeComm's design. Accordingly, the PCO's anticipatory repudiation of Contract 9001 was the proximate cause of the PraeComm's injury.

68. By reason of the foregoing, PraeComm is entitled to the amount it would have charged the Government for the FRN equipment if PraeComm had been told that PraeComm's FRN equipment would not be installed in the major Iraq cities represented by the Government and contractually identified in Contract 9001. PraeComm is entitled to $121,662, plus interest and attorney fees in the amount to be proved. In addition, PraeComm is entitled to its direct and proximate damages in the amount of $4,818,959.60, plus interest and attorney fees in the amount to be proved, for the loss of the FRN supplemental equipment that PraeComm would have installed but for the Government's breach of Contract 9001.

**COUNT II**

(Anticipatory Breach of Contract 9027)

69. Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 68 of this Complaint as if herein at length set forth.

70. On or about March 2005, the PCO expressed an absolute, definite, unconditional and unequivocal manifestation to refuse to perform Contract 9027, as modified, by not installing PraeComm's FRN equipment in the major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah as represented by the Government and contractually identified in Contract 9027, as modified, as the locations where PraeComm's FRN equipment was to be installed.

71. Based upon information and belief, the PCO contracted with Lucent for the installation of Lucent's AFRN equipment in major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah as represented by the Government and contractually identified in Contract 9027, as modified, as the locations where PraeComm's FRN equipment was to be installed.

72. The PCO's March 2005 expressed, absolute, definite, unconditional and unequivocal manifestation to refuse to perform Contract 9027, as modified, by not installing PraeComm's FRN equipment in the major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah, as represented by the Government and contractually identified in Contract 9027, constituted an anticipatory breach of Contract 9027, as modified, by the Government.

73. The PCO's decision to contract with Lucent for the installation of Lucent's AFRN equipment in the major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah represented by the Government and contractually identified under PraeComm's Contract 9027, as modified, constituted reasonable grounds for

PraeComm to treat the Government's actions as an anticipatory breach of Contract 9027, as modified.

74. PraeComm was financially harmed by the PCO's anticipatory breach of Contract 9027, as modified, because PraeComm's discounted pricing was based upon the facts that: (1) the Government represented and Contract 9027, as modified, identified the major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah for installation of PraeComm's FRN equipment; (2) the FRN equipment offered by PraeComm to PCO for installation in the Government represented and contractually identified major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah included equipment which was unique to PraeComm's design; (3) the PCO's representation to PraeComm that AFRN equipment had been delayed and descaled to the point where it will cover fewer cities and not be in place until June 2005; and (4) the PCO's representation that PraeComm's FRN equipment would need to become a long term solution given that the AFRN equipment would not be put into many cities and that FRN was to upgrade the existing analog system to a trunked radio network.. Accordingly, the PCO's anticipatory repudiation of Contract 9027, as modified, was the proximate cause of the PraeComm's injury.

75. By reason of the foregoing, PraeComm is entitled to $2,912,520, plus interest and attorney fees in the amount to be proved, which is the amount it would have charged the Government for the FRN equipment if PraeComm had been told that the FRN equipment would not be installed in the Government represented and contractually identified major Iraq cities identified in Contract 9027, as modified. PraeComm is also entitled to $205,714.29, for the two 6-channel systems it provided under the expectation that they would be installed as part of Contract 9027, as modified. PraeComm is also entitled to its storage fees for the equipment in

the amount of $277,506, plus interest and attorney fees in the amount to be proved. In addition, PraeComm is entitled to its direct and proximate damages in the amount of $9,637,920.40, plus interest and attorney fees in the amount to be proved, for the loss of the FRN supplemental equipment that PraeComm would have installed but for the Government's breach of Contract 9027, as modified.

**COUNT III**

(Constructive Change of Contract 9001)

76. Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 75 of this Complaint as if herein at length set forth.

77. On or about March 2005 PraeComm was informed by PCO that the Government intended to unilaterally change the terms of Contract 9001 regarding the Government represented and contractually identified major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala in which PraeComm's FRN system would be installed.

78. The PCO has never modified Contract 9001 regarding the removal of the Government represented and contractually identified major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala where PraeComm's FRN equipment is to be installed.

79. Based upon information and belief, the PCO has contracted with Lucent to install Lucent's AFRN equipment in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala where PraeComm's FRN equipment was to be installed under the Government represented and contractually identified in Contract 9001.

80. PraeComm did not voluntarily agree to the unilateral change of Contract 9001 regarding the removal of the specific major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala in which PraeComm's FRN equipment was to be installed. More specifically, PraeComm responded to the PCO's March 2005 statements regarding the removal of these cities with an objection to the Government's decision to unilaterally change the terms of Contract 9001 regarding the major Iraq cities where PraeComm's equipment would be installed.

81. The PCO's decision to unilaterally change the terms of Contract 9001 regarding the major Iraq cities has an economic impact on PraeComm, since PraeComm's discounted pricing for Contract 9001 was based upon the facts that (1) the Government represented and Contract 9001 identified the four major specified Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala as Iraq cities for installation of PraeComm's FRN equipment; and (2) the FRN equipment being offered to PCO under Contract 9001 by PraeComm included equipment which was unique to PraeComm's design. Accordingly, the PCO's unilateral change of Contract 9001 was the proximate cause of the PraeComm's injury.

82. The PCO's statements regarding the Government's decision not to install PraeComm's FRN equipment in the Government represented and contractually identified major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala, the PCO's decision to contract with Lucent to install Lucent's AFRN equipment in these major Iraq cities, the fact that PraeComm objected to the PCO's decision not to install PraeComm's FRN equipment in these major Iraq cities, and the economic impact of the PCO's decision on PraeComm constitute a constructive unilateral change by the Government to Contract 9001.

83. By reason of the foregoing, PraeComm is entitled to the amount it would have charged the Government for the FRN equipment if PraeComm had been told that the FRN equipment would not be installed in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala as represented by the Government and contractually identified in Contract 9001. PraeComm is entitled to $121,662, plus interest and attorney fees in the amount to be proved. In addition, PraeComm is entitled to its direct and proximate damages in the amount of $4,818,959.60, plus interest and attorney fees in the amount to be proved for the loss of the FRN supplemental equipment that PraeComm would have installed in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala but for the Government's breach of Contract 9001.

**COUNT IV**

(Constructive Change of Contract 9027)

84. Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 83 of this Complaint as if herein at length set forth.

85. On or about March 2005 PraeComm was informed by PCO that the Government intended to unilaterally change the terms of Contract 9027, as modified, regarding the Government represented and contractually identified major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah, As Samawah, Ad Diwaniyah, An Najaf, Al Hillah, and Karbala in which PraeComm's FRN system would be installed.

86. The PCO has never modified Contract 9027, as modified, regarding the removal of the Government represented and contractually identified major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah.

87. Based upon information and belief, the PCO has contracted with Lucent to install Lucent's AFRN equipment in the major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah where PraeComm's FRN equipment is to be installed as represented by the Government and contractually identified in Contract 9027, as modified.

88. PraeComm did not voluntarily agree to the unilateral change of Contract 9027, as modified, regarding the removal of the specific major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah in which PraeComm's FRN equipment was to be installed. More specifically, PraeComm responded to the PCO's March 2005 statements regarding the removal of these cities with an objection to the Government's decision to unilaterally change the terms of Contract 9027, as modified, regarding the major Iraq cities where the Government represented and the contract identified PraeComm's equipment would be installed.

89. The PCO's decision to unilaterally change the terms of Contract 9027, as modified, regarding the major Iraq cities has an economic impact on PraeComm, since PraeComm's discounted pricing for the Contract 9027, as modified, was based upon the facts that: (1) the Government represented and Contract 9027, as modified, identified the major Iraqi cities of Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah, for installation of PraeComm's FRN equipment; (2) the FRN equipment offered by PraeComm to PCO for installation in the specified major Iraq cities of Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah, included equipment which was unique to PraeComm's design; (3) the PCO's representation to PraeComm that AFRN

equipment had been delayed and descaled to the point where it will cover fewer cities and not be in place until June 2005; and (4) the PCO's representation that PraeComm's FRN equipment would need to become a long term solution given that the AFRN equipment would not be put into many cities and that FRN was to upgrade the existing analog system to a trunked radio network. Accordingly, the PCO's unilateral change of Contract 9027, as modified, was the proximate cause of the PraeComm's injury.

90. The PCO's statements regarding the Government's decision not to install PraeComm's FRN equipment in the PCO represented and contractually identified major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah, the PCO's decision to contract with Lucent to install Lucent's AFRN equipment in these major Iraq cities, the fact that PraeComm objected to the PCO's decision not to install PraeComm's FRN equipment in these major Iraq cities, and the economic impact of the PCO's decision on PraeComm constitute a constructive unilateral change by the Government to Contract 9027, as modified.

91. By reason of the foregoing, PraeComm is entitled to $2,912,520, plus interest and attorney fees in the amount to be proved, which is the amount it would have charged the Government for the FRN equipment if PraeComm had been told by the PCO that the FRN equipment would not be installed in the major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah and as contractually identified in Contract 9027, as modified. PraeComm is also entitled to $205,714.29, for the two 6-channel systems it provided under the expectation that they would be installed as part of Contract 9027, as modified. PraeComm is also entitled to its storage fees for the equipment in the amount of $277,506, plus interest and attorney fees in the amount to be proved. In addition, PraeComm is

entitled to its direct and proximate damages in the amount of $9,637,920.40, plus interest and attorney fees in the amount to be proved, for the loss of the FRN supplemental equipment that PraeComm would have installed in the "major Iraq cities" of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah but for the Government's breach of Contract 9027, as modified.

**COUNT V**

(Breach Of Duty Of Good Faith And Fair Dealing of Contract 9001)

92. Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 91 of this Complaint as if herein at length set forth.

93. On or about October 2004, the PCO represented to PraeComm that its equipment would be installed under Contract 9001 in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala.

94. The terms of Contract 9001 expressly stated that PraeComm's equipment would be installed in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala.

95. PraeComm's discounted pricing for Contract 9001 was based upon the PCO's representations and promises that PraeComm's FRN equipment would be installed in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala.

96. PraeComm's discounted pricing for Contract 9001 was based upon the terms of Contract 9001 stating that PraeComm's FRN equipment would be installed in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala.

97. The PCO has a duty of good faith and fair dealing rooted in the express representations, promises and the terms of Contract 9001 regarding the installation of PraeComm's FRN equipment in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala under Contract 9001.

98. The PCO breached its duty of good faith and fair dealing when it decided to install Lucent's AFRN equipment rather than PraeComm's FRN equipment in the major Iraq cities Ad Diwaniyah, An Najaf, Al Hillah and Karbala.

99. PraeComm was financially harmed when the PCO breached its duty of good faith and fair dealing on Contract 9001 by deciding not to install PraeComm's FRN equipment in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala. The PCO knew that PraeComm would not have offered discounted pricing to the Government if the PCO's representations, promises, and terms of Contract 9001 had not expressly stated that PraeComm's FRN would be installed in the major Iraq cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala.

100. By reason of the foregoing, PraeComm is entitled to damages in the amount of $ 121,662, plus interest and attorney fees in the amount to be proved, for the PCO's breach of duty of good faith and fair dealing on Contract 9001.

## COUNT VI

(Breach Of Duty Of Good Faith And Fair Dealing of Contract 9027)

101. Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 100 of this Complaint as if herein at length set forth.

102. On or about November 2004, the PCO represented to PraeComm that its FRN equipment would be installed in the major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah.

103. The terms of Contract 9027 expressly stated that PraeComm's FRN equipment would be installed in the major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah.

104. PraeComm's discounted pricing for Contract 9027 was based upon the PCO's representations, promises and terms of Contract 9027 regarding the fact that PraeComm's FRN equipment would be installed in the major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah

105. PCO issued MOD 1 to contract 9027 on or about January 28, 2005, substituting the cities of Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah in place of Al Huwayjah, Altun Kupri, Daquq, Dibs, Layan, Ryad and Abbasiyah.

106. PraeComm's discounted pricing for the FRN equipment in MOD 1 was based upon the PCO's representations and promises, and terms of MOD 1 that PraeComm's FRN equipment would be placed in the major Iraq cities of Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah,

107. The PCO has a duty of good faith and fair dealing rooted in the PCO's representations, promises and terms of Contract 9027 and MOD 1 regarding the installation of PraeComm's FRN equipment in the major Iraq cities of Samarra, Kirkuk, Al Sulaymaniyah, Al

Kut, Al Fallujah, Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah.

108. The PCO breached its duty of good faith and fair dealing when it decided to install Lucent's AFRN equipment rather than PraeComm's FRN equipment in the major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah.

109. PraeComm was financially harmed when the PCO breached its duty of good faith and fair dealing on Contract 9027 and MOD 1 by deciding not to install PraeComm's FRN equipment in the Government represented, promised, and contractually identified major Iraq cities of Samarra, Kirkuk, Al Kut, Tikrit, Ramadi, Baqubah, An Nasariyah and As Samawah PraeComm would not have offered discounted pricing to PCO if Contract 9027 and MOD 1 had not expressly represented, promised, and contractually identified that PraeComm's FRN would be installed in the major Iraq cities of Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah.

110. By reason of the foregoing, PraeComm is entitled to damages in the amount of $3,395,740.29, plus interest and attorney fees in the amount to be proved, for the PCO's breach of duty of good faith and fair dealing on Contract 9027 and MOD 1.

**PRAYER FOR RELIEF**

WHEREFORE, PraeComm prays that judgment be entered in its favor and against Defendant as follows:

a. With regard to Counts I and II,, that the Court find that the Government anticipatorily breached material terms of Contracts 9001 and 9027, as modified, and award PraeComm its direct and proximate damages in the

amount of $14,456,879, plus interest and attorney fees in the amount to be proved, for the loss of the FRN supplemental equipment that PraeComm would have installed, but for the Government's breach and $3,517,402.29 the amount PraeComm would have charged the Government for the FRN equipment if PraeComm had been told that the FRN equipment would not be installed in the Government represented and contractually identified major Iraq cities in Contracts 9001 and 9027, as modified, plus interest and attorney's fees in the amount to be proved; or

b. In the alternative, with regard to Counts III and IV, that the Court find that the Government breached Contracts 9001 and 9027 based upon a theory of constructive change of contract and award PraeComm its direct and proximate damages in the amount of $14,456,879, plus interest and attorney fees in the amount to be proved, for the loss of the FRN supplemental equipment that PraeComm would have installed in the contractually agreed upon and specifically identified major Iraq cities in Contract 9001 and 9027, as modified, but for the Government's breach and $3,517,402.29 the amount PraeComm would have charged the Government for the FRN equipment if PraeComm had been told that the FRN equipment would not be installed in the Government represented and contractually identified major Iraq cities in Contracts 9001 and 9027, as modified, plus interest and attorney's fees in the amount to be proved.

c. In the alternative, with regard to Counts V and VI that the Court find that the Government breached its duty of good faith and fair dealing on

Contracts 9001 and 9027, as modified, and award damages in the amount of $3,517,402.29, plus interest and attorney's fees in the amount to be proved;

d. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

January 23, 2006

Krista L. Pages, Esq.
Joseph J. Summerill IV, Esq.
DYKEMA GOSSETT PLLC
1300 I Street, NW; Suite 300 West
Washington, DC 20005
202-906-8600 VOICE
202-906-8669 FACSIMILE
Counsel of Record for Plaintiff
PRAECOMM, INC.

DC01\101273.1
ID\KLP

November 8, 2005

Mr. Thomas Zubel
Contracting Officer
PCO Contracting Activity
Republican Presidential Compound
Baghdad, Iraq, APO AE 09316

Re: Contract Claim Under Contract No. W914NS-05-F-9001 and Contract No. W914NS-05-F-9027 for Contracting Officer's Final Decision

Dear Mr. Zubel:

On behalf of PraeComm, Inc., also known as, American Radio (hereinafter "American Radio"), please consider this claim to be filed against the U.S. Army Corps of Engineers, pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 601 et seq. For the past six months American Radio has been negotiating with the Project and Contracting Office ("PCO") concerning unilateral constructive modifications to Contract No. W914NS-05-F-9001 and Contract No. W914NS-05-F-9027 entered into by the PCO and American Radio. The dispute arises out of the PCO's deletion of certain cities in which the equipment supplied by American Radio under the above contracts was to be installed. The PCO's unilateral change to the contractually specified major Iraq cities is a breach of the Government's duty of Good Faith and Fair Dealing in administering the contracts. Such actions by the PCO have had a significant adverse impact on American Radio for which American Radio claims damages in the amount of $17,974,281.29.

In accordance with 41 U.S.C. § 605(a), a final decision in writing by the PCO Contracting Officer is requested regarding this claim. Because this claim is in excess of $100,000.00, a duly executed Certification in accordance with the Contract Disputes Act (41 U.S.C. § 605 (c)(1)) is attached hereto.

**Background of the Contracts**

The Coalition Provisional Authority authorized a reprogramming action on the Iraqi police, fire, ambulance and Civil Defense Services communications in the amount of $12

Million. The Program Review Board ("PRB") Allocation Request #32, dated October 12, 2003, granted the Ministry of Interior $12 Million for the purchase of Iraqi police handheld radios. Attachment 1, (PRB Minutes Summary) The CPA – Contracting Activity in Iraq, Contracting Officer Frank V. Sharshel, issued an RFP for the equipment on October 23, 2003. Contract DABV01-03-C-0032 ("Contract 0032") was awarded to American Radio, in the amount of $5,957,380 on December 17, 2003. Under Contract 0032, American Radio provided a UHF radio system in 83 cities (in 17 Governates) in Iraq. The contract Scope of Work Section C.1 "PURPOSE" stated:

> C.1.1. A lack of tactical communications equipment for the Iraq Police has caused a critical shortfall in operational capability. The Contractor shall ensure a Land Mobile Network providing the Iraqi Police Force with reliable communications in order to maintain the stability of the country and the safety of their officers and the Iraqi people.
>
> C.1.2 This requirement is to provide **<u>a low cost interim solution</u>**, which can be fielded in the near term.

Under Contract 0032 American Radio provided the specified radios meeting the mandatory requirements at cost plus a fixed fee. American Radio also provided a proposal responsive to Contract 0032 Section C2.3 "RADIO –Optional requirements" that included Trunking, Digital Technology, Base Stations, Repeaters, Battery Chargers, Frequency/Channelisation, and Fielding/Installation/Set to work. The "Network" that was created was the backbone for the radio system that would be built upon and expanded to support the radio subscribers and users as the number of first responders increased.

The remaining approximately $6 Million of the amount granted to the Ministry of Interior was to be used to satisfy police requirements of 1 radio per 3 police officers and fire, ambulance, and Civil Defense services. Attachment 1, (PRB Minutes Summary – March 10, 2004). This money was used to build out the portable radio and system network. These items were procured under follow on contracts with American Radio.

In the fall of 2004 the PCO again contacted American Radio to obtain some of the Radio-Optional requirements proposed in response to the RFP for Contract 0032. Colonel John Graham, MNSTC-I and LTC Eric Fretheim CPATT C6 verbally told American Radio that the Government wished to install American Radio's First Responder Network ("FRN") (trunked radio system) in the cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala for two reasons, (1) American Radio had already supplied equipment in these cities as part of Contract 0032 and (2) because the Advanced First Responder Network ("AFRN") provided by Lucent Technologies ("Lucent") would not be able to be installed quickly enough to meet the PCO's needs in these cities.

Based on the PCO's representations that American Radio's FRN system would be installed in these major Iraqi cities, American Radio entered into Contract No. W914NS-050F-9001 ("Contract 9001") on October 14, 2004. The Contract was issued by the PCO, but payment

was made by the United States Army Corps of Engineers. The scope of work for Contract 9001 is contained in the "Statement of Requirements for Trunked UHF Radio Upgrade for Iraqi Security Forces," Attachment 2. Contract 9001 specified that the radio system upgrades would be in the four major cities of Ad Diwaniyah, An Najaf, Al Hillah and Karbala. American Radio offered the equipment to the Government at deeply discounted unit prices significantly below American Radio's commercial prices[1] because having installed the proprietary FRN system in these four major cities all follow on contracts for equipment and services to these systems could only be provided by American Radio. The Government knew that installation of the FRN system would mean that all follow on contracts for that sole source, proprietary equipment would be American Radio's. American Radio timely performed the requirements of Contract 9001 and supplied the equipment to be placed in these cities.

During American Radio's period of performance of Contract 9001, on November 22, 2004, the PCO increased the ceiling on Lucent's ID/IQ Contract W914NS-04-D-005 for AFRN from $75 Million to $150 Million to enable the simultaneous issuance of a Task Order to Build-Out the AFRN. Attachment 3 (Notice to Award AFRN). This contract increase was the result of the PCO technical experts' assessment of the complexity of the AFRN requirements and the ability of other sources to build-out the AFRN in additional cities. The PCO technical experts had determined that only Lucent could meet the Government's urgent requirements.

Despite the PCO technical expert's findings regarding the AFRN system, Colonel Graham and LTC Fretheim again approached American Radio in November 2004 and asked American Radio if it would supply and install equipment to be part of an FRN system in the cities of: Samarra, Kirkuk, Al Sulaymaniyah, Al Kut, Al Fallujah, Al Huwayjah, Altun Kupri, Daquq, Dibs, Layan, Ryad, Abbasiyah, Tikrit and Ramadi. Seven of these cities are considered "major Iraq cities" and seven of these cities are considered "smaller Iraq" cities. The PCO also informed American Radio at that time that it was likely that some or all of the smaller Iraq cities would be replaced with larger cities from the Lucent AFRN contracts.

Having been informed by the Government that its FRN system would now be installed in seven additional major Iraqi cities, American Radio again agreed to offer the equipment to the Government at deeply discounted unit prices significantly below American Radio's commercial prices and also offered two 6 channel 100 Watt MPT3200 Single Site systems at no charge for the cities of Tikrit and Ramadi. American Radio executed Contract No. W914NS-05-F-9027 ("Contract 9027") with the PCO on December 6, 2004. The US Army Corps of Engineers was responsible for payment.

Contract 9027 included a "Statement of Work for Conversion to Trunked Radio Network for Iraqi Police Services," (Attachment 4) and stated that "The Purpose of this effort is to convert radio systems in 12 cities from standard analog to trunked radio systems thereby supporting the expansion of the IPS to 145,000. The Statement of Work "Background" section also stated:

[1] 30-40% discounts

> Over the past year, the coalition has installed ARI analog radio systems in a number of cities in Iraq to support the Iraqi Police Service. These radio systems were originally designed to provide initial support for a force of 85,000 officers. **The radios were to be replaced in June 2004 with the Advanced First Responder Network. That network has been delayed and descaled to the point where it will cover fewer cities and not be in place until June 2005.** As a result of the police force expansion to 135,000 officers, the current radio systems will not be sufficient to support the expanded requirements. Additionally, the system will need to become a long term solution given that the AFRN will not be put into many cities. The solution is to upgrade the existing analog system to a trunked radio network. (Emphasis added)

The Contract provided that all systems must be installed and functional within 60 days of the award of the project.

American Radio diligently began arrangements for shipping and installation. The Lucent AFRN system development continued to experience delays. Faced with these delays, in January 2005 Colonel Graham determined that it was necessary to install the FRN system in six additional major Iraqi cities: Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah. PCO issued Modification P00001 to Contract No. W914NS-05-F-9027 ("MOD 1") on January 28, 2005, substituting the cities of Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah and As Samawah in place of Al Huwayjah, Altun Kupri, Daquq, Dibs, Layan, Ryad and Abbasiyah in American Radio's Contract 9027. Attachment 5. Again, American Radio offered to provide the equipment to the Government at deeply discounted unit prices significantly below American Radio's commercial prices.

**PCO Changed the Contractually Specified Cities**

Upon LTC Fretheim's departure, Major Robert Sile assumed his responsibilities as it pertains to FRN and AFRN program manager for CPATT C-6. On March 5, 2005 American Radio was informed by email from Major Sile, and by email from First Lt. Andrew Radano CPATT C-6 that American Radio's FRN system would now be installed in only 5 of the 17 major cities specified by the PCO. Instead, the AFRN system would be installed in 12 of the major Iraq cities specified in American Radio's contracts. Dom DiLuigi, American Radio's President, informed Major Sile, by email on March 6, 2005, that the removal of the 12 major cities from American Radio's contract would "greatly impact [American Radio's] program/company technology deployment and [American Radio's] presence and future share of Iraqi wireless communications market (which we have worked unbelievable hard to establish as a small business manufacturer amongst so many Fortune 100 companies such as Lucent, Tyco and Motorola)." Major Sile's email response that day did not address Mr. DiLuigi's concerns. Instead, Major Sile only stated that the shifting of the cities was simply his decision to sort the overlaps in the AFRN and FRN contracts so that two systems would not be set up in the same city. There was no explanation for why the PCO had now chosen to put AFRN in the cities rather than the FRN systems that were ready and waiting to be installed. There was no offer by

the Government to compensate American Radio for the damages it would incur as a result of this arbitrary change to American Radio's contracts.

American Radio then presented three proposals for the PCO's consideration as to what could be done with the systems American Radio was contracted to provide. Major Sile rejected these proposals in a March 12, 2005 email. He stated that PCO still wanted the FRN system installed initially in the 5 major cities of Dahuk, Irbil, Fallujah, Al Amarah, and As Sulaymaniyal, and would try to find 12 smaller cities for the remaining FRN systems where AFRN would not be installed. Major Sile stated "I now understand you had other designs for the system and leveraging it for business opportunities but that was never a consideration for us nor was it a consideration for selecting you as a vendor. You were selected in part because it was felt you could deliver a FRN system in a timely manner and provide needed comms to the ISF and first responders." No consideration was given by Major Sile in his response of the fact that American Radio had offered the equipment to the Government at deeply discounted unit prices significantly below American Radio's commercial prices because of the representations of the Government and the terms of the contract regarding the cities in which American Radio's equipment would be installed.

By email dated April 8, 2005 Major Sile stated that in addition to the 5 major cities above, the PCO wanted American Radio to install the FRN system in the 5 smaller cities of Balad, Umm Qasr, Al Qubbah, Tal Afar, and Al Muqadiyah. In all discussions between American Radio and the PCO there was no recognition by the PCO that the change in the cities had any economic impact on American Radio. For example, by email of July 24, 2005, First Lt. Andrew Radano stated that "cities lost to AFRN in no way can be recouped" but FRN system cities were now up to 15, including both definite and tentative choices and that it was the PCO's position that "if we can keep total of 18 cities our feeling is that modifications to the contract should include name of cities only." American Radio disagreed with this conclusion and on August 14, 2005, American Radio wrote to Mr. Zubel stating that if the 12 major Iraq cities were taken out of American Radio's contracts, then American Radio would be damaged.

No written modification has been issued changing the cities in American Radio's contracts but it is clear that at least twelve of the major cities in American Radio's contracts are now part of Lucent's contracts.

**<u>American Radio Relied on the PCO's Representations</u>**

In contracting with the PCO, American Radio relied on the PCO's representations as well as the terms of the contract, with regard to the cities specified in the Scope of Work for Contracts 0032, 9001 and 9027. Colonel Graham and LTC Fretheim knew that American Radio's offer to provide the equipment to the Government at deeply discounted unit prices significantly below American Radio's commercial prices was based on the fact that American Radio would be the sole source for equipment in these specified major Iraq cities for two reasons. First, the MPT3200 technology provided would be proprietary as acknowledged in Contract No. W914NS-05-F-9027. Second, prior to the sole source contracts' execution, several FRN/AFRN PCO program managers repeatedly expressed to American Radio (both verbally and in writing) that only one technology would be utilized per city. It was therefore understood that American

Radio would be the exclusive supplier for all follow on equipment because only American Radio's equipment would be compatible with the network systems in the contractually specified cities.

The PCO also knew or should have known that any constructive change to the contract removing any of the major specified cities would have a direct economic impact on American Radio because all follow on contracts from the PCO would go to the sole source provider of either the FRN or the AFRN system. Based on the PCO's representation that American Radio would be the supplier in the contractually specified cities, American Radio offered the equipment to the Government at deeply discounted unit prices significantly below American Radio's commercial prices and agreed to supply 6 channel 100 watt MPT3200 for Tikrit and Ramadi at no charge.

The PCO selected American Radio because it was uniquely qualified to get the systems in place quickly. The Scope of Work clearly stated and American Radio was told by PCO representatives that its system was urgently needed in the contractually specified cities and that these systems would be installed as quickly as possible. At the time of contracting with the PCO, American Radio was not informed that any "sorting out" of the contract overlaps between American Radio's FRN system and Lucent's AFRN system would be sorted in favor of Lucent and result in American Radio losing its cities.

**<u>The Government Breached its Duty of Good Faith and Fair Dealing</u>**

The PCO and US Army Corps of Engineers' conduct during American Radio's performance of Contracts 0032, 9001 and 9027 was a breach of the Government's implied covenant of Good Faith and Fair Dealing. The Government acted in bad faith, and knowingly misled American Radio by promising that its FRN system would be installed in specified major Iraqi cities and then entering into sole-source contracts with Lucent for the AFRN system in the same cities. The Government also acted in bad faith by accepting American Radio's deeply discounted unit prices and free equipment and upgrades knowing that the price was offered because American Radio was told it would be the sole source supplier of the FRN system in the contractually specified cities. We believe that the Government never intended to put American Radio's equipment in all of the contractually specified major cities.

The Government has not installed any of American Radio's equipment in any of the cities promised. The Government has a duty to cooperate and not hinder a contractor's performance. Clearly, the PCO's actions have hindered American Radio's ability to place the FRN system in the contractually specified cities and has interfered with American Radio's follow on work for the specified cities which would include fixed base station equipment and vehicular mobile radios that were not originally contracted for due to announced budgetary constraints at the time of awarding these contracts.

**PCO's Deletion of Contracted Cities has Damaged American Radio**

The Government's breach of its Duty of Good Faith and Fair Dealing in contracting with American Radio has damaged American Radio. Had the Government told American Radio at the time it entered into Contracts 0032, 9001, and 9027 that it was also entering contracts for the same cities with Lucent for installation of the AFRN systems and, therefore, American Radio's major cities would be replaced by smaller cities, American Radio would never have offered the equipment to the Government at the deeply discounted unit prices significantly below American Radio's commercial prices or provided equipment at no cost for the cities of Tikrit and Ramadi. As a result of the Government's bad faith and misrepresentations, American Radio is entitled to be placed in as good a position as it would have been had the government not breached the contract. American Radio's damages are, therefore, the difference in unit price American Radio would have offered (commercial unit prices), from its actual offer price (unit prices at 30-40% discount). In addition, American Radio is entitled to be paid for that equipment it offered the Government, in good faith, at no charge, as well as the storage fees it incurred because of the Government's delay in acceptance of the equipment in Baghdad. The following chart is a calculation of those damages. (See also Attachment 6).

**American Radio Adjusted Offer Price**

| | |
|---|---|
| Contract 9027 2-6 Channel systems (Tikrit & Ramadi) | $ 144,000.00 |
| Contract 9027 adjusted | $ 2,912,520.00 |
| Contract 9001 adjusted | $ 121,662.00 |
| 2-6 Channel systems adjusted | $ 61,714.29 |
| Storage Fees | $ 277,506.00 |
| Total | $ 3,517,402.29 |

Therefore, based on the Government's breach of its Duty of Good Faith and Fair Dealing, American Radio submits this claim for $3,517,402.29

In addition, as a result of the Government's bad faith, Lucent (instead of American Radio) has been given the opportunity for all follow on PCO contracts in 12 major Iraqi cities promised to American Radio. The Government's actions were driven for purely political reasons and not because Lucent's AFRN system provides better service to the Iraqi police, fire fighters or Civil Defense services. In addition, the Government's change to American Radio's contracts was not driven by price or any failure of delivery on American Radio's part. In fact, American Radio's FRN system is sitting in a warehouse in Baghdad ready to be installed and was purchased at a dramatically lower price than the Lucent AFRN system. Based upon information and belief, Lucent has not yet provided the AFRN system in any of the cities removed from American Radio's contracts.

The Government's arbitrary and unreasonable decision to remove 12 of the major cities in American Radio's Contracts has resulted in a loss to American Radio of conservatively over $14 Million. Attachment 7. But for the Government's actions, American Radio would have been the sole source supplier for the equipment in follow on contracts with the PCO. A very conservative estimate of what that equipment would be is itemized in Attachment 7.

In accordance with 41 U.S.C. § 605 (a), American Radio hereby requests the Contracting Officer's final decision on its claim in the amount of $17,974,218.29

Sincerely,

Dominic Di Luigi
President

Certification

This is to certify that the claims of PraeComm, Inc., also known as American Radio, herein have been made in good faith; that supporting data are accurate and complete to the best of my knowledge and belief, that the amounts requested accurately reflect the contract adjustment for which PraeComm, Inc., also known as American Radio, believes the United States Army Corps of Engineers is liable, and that the undersigned is duly authorized to certify this claim on behalf of PraeComm, Inc., also known as American Radio.

11-7-05

Dom Di Luigi
President
PraeComm, Inc.

Date of Execution

سلطة الائتلاف المؤقتة
The Coalition Provisional Authority

Press Room
Updates
Documents
Pillars
Links

***Program Review Board (PRB) Minutes Summary – March 10, 2004***

Attendees: Not Available. A quorum was present.

The Program Review Board approved the following reprogramming action:

#517 – Iraqi Police, Fire, Ambulance and Civil Defense Services Communications– $12,000,000. The Ministry of Interior (MoI) was represented. PRB Allocation Req #32 dated 12 Oct 2003 granted the Ministry of Interior $12,000.000.00 for the purchase of Iraqi Police Hand-held Radios. An initial contract to the value of $5,957,380.00 has been awarded to American Radio (ARI) to provide a trunked UHF radio system throughout Iraq. An initial 10,000 UHF radios complete with all ancillary items including batteries and chargers is also included. The radios are capable of operation using 16 channels, however in the largest cities only 8 will be in use, with the remaining 8 channels spare. These spare channels can be utilized by the other emergency services **at no additional** cost (excepting the cost of the radio at $329) Approval is requested to spend the remaining funds totaling $6,042,620 to satisfy Police Requirements of 1 radio per 3 police officers and also include radios to meet the needs of the Fire, Ambulance and Civil Defense services.

APPROVED.

The Chair announced that a detailed review of the Amended 2004 Iraqi National Budget had identified additional resources for projects benefiting the relief and reconstruction of Iraq. In light of this information, the rest of the agenda items were tabled to be considered for inclusion in the amended budget. The following Program Review Board Requests were on the agenda:

| PRB | Name | Governorate | CPA Office or Unit | Funding Source | Program | Amount Requested |
|---|---|---|---|---|---|---|
| 664 | MoO Capital Development | Various | M. of Oil | DFI | Reconstruction | $200,000,000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 665 | MoF Trade Bank of Iraq | Baghdad | M. of Finance | DFI | Economic Programs | $95,000,000 |
| 662 | MoE. MoO Baghdad E. Oil Fields | Baghdad | M. of Electricity/Oil | DFI | Electricity | $50,000,000 |
| 653 | MoI Logistics Distribution and Ops | Various | M. of Interior | DFI | Iraqi Security Forces | $10,000,000 |
| 651 | MoE Security Force | Various | M. of Electricity | DFI | Police/ Security | $30,000,000 |
| 649 | Olympic Committee | All | M. of Youth & Sports | DFI | Nation building | $9,000,000 |
| 666 | Equipment for Battalion sets | IAF Installations | CMATT | DFI | Police/ Security | $3,000,000 |
| 646 | Operating Budget | IAF Installations | CMATT | DFI | Police/ Security | $3,000,000 |
| 663 | Oil for Food Audit | Baghdad, Erbil | | DFI | Humanitarian | $3,000,000 |
| 656 | MoI Police Station Survey | Various | M. of Interior | DFI | Police/ Security | $220,000 |
| 657 | MoI Border Station Survey | Various | M. of Interior | DFI | Police/ Security | $85,000 |

Printer-friendly Version

Home | Official Documents | Budget and Finance | Transcripts | Press Releases
Requests for Proposals/Solicitations | Business Center | Webmaster
Privacy and Security Notice

**SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS**
*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30*

1. REQUISITION NO.: W91SWE41852257
2. PAGE 1 OF
2. CONTRACT NO.: W91NS 05-F-[illegible]
3. AWARD/EFFECTIVE DATE: 14 Oct 04
4. ORDER NO.:
5. SOLICITATION NO.:
6. SOLICITATION ISSUE DATE:
7. FOR SOLICITATION INFORMATION CALL: a. NAME: Robert Mueller email Robert.mueller@CPA-IQ.ORG
b. TELEPHONE NO. (No collect calls): 703-343-9222
8. OFFER DUE DATE/LOCAL TIME:
9. ISSUED BY CODE
PCO- Contracting Activity
Republican Presidential Compound
Baghdad, Iraq
APO AE 09316
10. THIS ACQUISITION IS ☒ UNRESTRICTED ☐ SET ASIDE: % FOR ☐ SMALL BUSINESS ☐ SMALL DISADV BUSINESS ☐ 8(A)
SIC:
SIZE STD:
11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED ☐ SEE SCHEDULE
12. DISCOUNT TERMS: **Net 30**
☐ 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)
13b. RATING
14. METHOD OF SOLICITATION ☐ RFQ ☐ IFB ☐ RFP
15. DELIVER TO CODE
IN ACCORDANCE WITH CONTRACT OR PROPOSAL AND STATEMENT OF WORK
16. ADMINISTERED BY CODE
Same as block 9
17a. CONTRACTOR/OFFEROR CODE FACILITY CODE
American Kham[illegible]
5[illegible] Riverdale [illegible]
San Diego CA 92[illegible]
TELEPHONE NO. [illegible] EMAIL [illegible]
18a. PAYMENT WILL BE MADE BY CODE
US Army Corps of Engineers Financial Center
Attn: CEFC-FP
5722 Integrity Drive
Millington, TN 38054-5005
Attn: Capt Matthew Carter
PCO Comptroller Office 703 343 9246
cefc-POinvoices@usace.army.mil
☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER
18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED ☐ SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | IN ACCORDANCE WITH CONTRACTOR PROPOSAL AND STATEMENT OF WORK | | | | |
| 0001 | Beneficial MPT portables (FFP partial payments authorized) | 1502 | Ea | $1[illegible]9.00 | $283,[illegible]71.00 |
| 0002 | Miscellaneous expenses (FFP – Final payment only) | 1 | Jb | $30,0[illegible]0.00 | $30,000.00 |
| 0003 | Other (partial payments authorized – not to exceed (NTE) amount, contractor entitled only to actuals up to NTE amount) Delivery 30 Nov 04 | nte 100 | Days | $5[illegible]0.00 | NTE $50,000.00 |
| | *(Attach Additional Sheets as Necessary)* | | | | |

25. ACCOUNTING AND APPROPRIATION DATA
[illegible] 2100 P0 2004 C [illegible] CPOI 024000 40044 25GY ZLFC63
26. TOTAL AWARD AMOUNT (For Govt. Use Only): NOT TO EXCEED: $363,[illegible]71.00

☐ 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED.
☐ 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA ☒ ARE ☐ ARE NOT ATTACHED.
☐ 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN 1 COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.
☐ 29. AWARD OF CONTRACT: REFERENCE ____ OFFER DATED ____. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

30a. SIGNATURE OF OFFEROR/CONTRACTOR: [signature]
30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT): Don Duell [illegible] – [illegible]
30c. DATE SIGNED: 12-14-04
31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER): [signature]
31b. NAME OF CONTRACTING OFFICER (TYPE OR PRINT): ROBERT A. MUELLER
31c. DATE SIGNED: 15 Dec 04

32a. QUANTITY IN COLUMN 21 HAS BEEN ☐ RECEIVED ☐ INSPECTED ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED
32b. SIGNATURE OF AUTHORIZED GOVT REPRESENTATIVE
32c. DATE
33. SHIP NUMBER ☐ PARTIAL
34. VOUCHER NUMBER
35. AMOUNT VERIFIED CORRECT FOR
36. PAYMENT ☐ COMPLETE ☐ PARTIAL ☐ FINAL
37. CHECK NUMBER
38. S/R ACCOUNT NO.
39. S/R VOUCHER NO.
40. PAID BY
41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT
41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER
41c. DATE
42a. RECEIVED BY (Print)
42b. RECEIVED AT (Location)
42c. DATE REC'D (YY/MM/DD)
42d. TOTAL CONTAINERS

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is [illegible]
SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT
STANDARD FORM 1449 (10-95)
Prescribed by GSA - FAR (48 CFR) 53.212

W914NS-05-R-00



# MANDATORY SHIPPING DIRECTIONS

## PCO Logistics:

PCO Logistics is required to track equipment, materials and goods coming into Iraq under the Re-building Iraq effort. This tracking and inherent accountability process will assist in assuring that all equipment materials and goods are able to cross the borders and move to final destination with minimal delay and at reduced risk. However, in order to accomplish this mission, maximum cooperation is necessary. Prompt notification and compliance with our information requirements will assist in providing advance notice to the point of entry of all inbound shipments. This process affords coordination in the movement of all convoys which will enable improved monitoring and de-conflicted convoy schedule. Prompt notification also improves security coordination through the operations center.
To get started follow the following steps:

Step One
Upon contract award the contractor is required to provide the necessary logistical information needed by PCO Logistics. This information can be provided and updated as necessary by going to the PCO website (http://www.rebuilding-iraq.net) and logging in by selecting "Contractor/Vendor Log In" under the Logistic heading. Initial log in will require the user to request a user name and password. Once the username and password is provided the user can identify and grant access to the other members or subcontractors. Should there be any problems with this process contact the Logistics Movement Coordination Center (LMCC) Watch Officer directly at the following e-mail address: pco_ncc@halliburton.com and the necessary assistance will be provided. If the interim process is still in place the contractor will find four (4) forms listed and available under the logistics heading (Logistics Information Requirements Form, Reconstruction Levy Exemption Form, Cargo Plaques and Logistical Support Request). These forms should be individually completed and, with the exception of the cargo plaque, sent electronically to the above mentioned e-mail address for the LMCC. The first form submitted will be the Logistics Information Requirements Form. The Logistics Information Requirements Form should be completed upon award of contract and updated as necessary. All updates and changes to this form should be sent to the same e-mail address as the original form. Additional contact information is available on the website mentioned above. Always reference the contract number.

Step Two
CPA 1-47 CUSTOMS LEVY EXEMPTION AND SHIPMENT REQUIREMENTS FOR RECONSTRUCTION PROJECTS UNDER PROJECT AND CONTRACTING OFFICE (PCO)

Effective 15 April 2004 Tariff Regulations pursuant to CPA Orders #54, as amended by Order #70 (Orders #54 and #70 are posted on the website), require commercial importations into Iraq to pay a 5% levy except for food, books, medicine, medical equipment, clothes and oil. Additional exemptions include NGO's, International Organizations, Reconstruction Projects under PCO, and single exempt donations. Items shipped under this contract are exempt from this "Levy" provided a completed Reconstruction Levy Exemption Form is attached and included with each invoice and packing slip.

**<u>The contractor is required to fill out the Reconstruction Levy Exemption Form and attach the duty free form to each shipment of goods under this contract that crosses the border into Iraq in order to qualify for the exemption. The contractor must submit one copy of the completed duty free form and a copy of the first page of the primary contract, for customs verification, to the contracting officer and the PCO Logistics Office at pcocustoms@halliburton.com) 72 hours prior to the planned arrival date at the Iraq point of entry.</u>**

Step Three
The items being acquired are for Iraqi Reconstruction and as per the "Packing and Marking Instructions" of this contract, and shall be Packaged and Marked accordingly. Additionally, a Cargo Plaque is available from the website at http://www.rebuilding-iraq.net under the logistics tab located at the top of the page. There is a memorandum posted that explains how to complete the plaques. There are three plaques, one is for shipments arriving into Baghdad International Airport, one is for shipments arriving into the Port of Umm Qasr, and the third one is for all other shipments. The use of these plaques will ensure they are properly identified as PCO shipments and will reduce risk of loss or pilferage. Each shipment must have a cargo plaque affixed to all sides of each container, pallet, or package.

Step Four

If this contract has the shipment bound for a PCO warehouse location and will require PCO Logistics to assist in the shipment from the point of entry into Iraq or material handling equipment support at the warehouse, a Logistical Support Request (LSR) must be completed and submitted 48 hours prior to expected movement of the shipment or its arrival at the point of entry. The LSR can be found at the above mentioned web site under the logistics tab.

It is the contractor's responsibility to provide all the requested information mentioned above as well as using the identified cargo plaques in sufficient time to allow for required delivery. Failure to comply with these instructions may result in a delay of the goods and materials being shipped from arriving at their final destination. Delays resulting from failure to follow the above steps may be assigned as the contractor's responsibility.

# STATEMENT OF REQUIREMENTS FOR

# TRUNKED UHF RADIO UPGRADE

# FOR

# IRAQI SECURITY FORCES

1.0 GENERAL The Coalition Provisional Authority now MNSTC-I has a requirement to upgrade UHF radio systems in four cities to provide trunked communications.

2.0 BACKGROUND The current radio systems in Ad Diwaniyah, An Najaf, Al Hillah and Karbala are FM single channel systems. These systems provide basic communications capabilities for the Iraqi Police Forces, however, the systems are encrypted with a Type I encryption system which requires hand keying the radios to change encryption. Because it is impractical to do so on a frequent basis, lost and captured radios can be used to monitor police communications. In addition, the capacity of these systems is limited. Converting these cities to trunked networks will allow compromised radios to be cut out of the system from a central station. In addition, the capacity of the current system will be increased.

3.0 SPECIFICATIONS:

3.1 Retrofit 1502 portable radios to MPT trunked capable systems.
3.2 Install and configure upgrades to convert the 4 cities to trunked systems.

4.0 PERIOD OF SERVICE

4.1 The warranty period will not be less than one year

5.0 CONTRACTOR RESPONSIBILITIES

5.1 Will provide unit programming software, cable for both PC download/unit to unit cloning, documentation and training
5.2 Will provide distribution and installation of the radios at designated sites.
5.3 Will provide an efficient and effective project management and tracking mechanism to ensure the devices are properly fielded.
5.4 Will provide training on the systems.

6.0 GOVERNMENT RESPONSIBILITIES

6.1 Providing a distribution plan and coordinating a distribution schedule.
6.2 Provide frequency plans.

7.0 CONTRACTOR RESPONSIBILITIES

7.1 Submit status updates in writing to the CPATT C6 as directed by the CPATT C6.
7.2 Provide proper documentation (CPATT approved) to tracking the issue and installation for each location prior to submitting and request for payment.
7.3 Coordinate the delivery schedule with the CPATT C-6 to ensure that deliveries to priority locations are met first.
7.4 Will provide the government all codes and programming data files in writing and electronically.

7.5 Provide accurate tracking data of each shipment.

8.0 PROJECT MANAGEMENT: The vendor will provide project management to coordinate the installation. This project manager will be responsible for but not limited to:

8.1 Accurately tracking installation status.
8.2 Inventory status and accounting.
8.3 Reporting status as required to CPATT.
8.4 Training and engineer planning.

**Four City Technology Demonstration Trunking Upgrade Proposal**

Our initial tasking proposal to demonstrate technology and begin program would be focused on the following four cities, the list for which was provided by LTC Fretheim.

1. Ad Diwaniyah
2. An Najaf
3. Al Hillah
4. Karbala

Our recommendation for these four cities is as follows:

1. 4 – Six channel MPT combined trunked single site repeater system, 24 channels total, all of which are already awarded via contract 0032.

   Total price: $0.00

2. 1378 MPT portable radios already awarded: $1.00

3. With 24 Trunked channels @ 100-120 units load capacity per Trunked repeater channel, number of recommended units would be roughly 2880 units with 1378 already contracted for. Balance remaining would be 1502 MPT portable radios which will be upgraded from conventional units to MPT trunked units @ ~~179~~ 189 per unit.

   Retrofit price for an additional 1502 MPT portables: ~~$ 00,000.00~~ $283,878.00

4. Base Stations are already awarded with 116 units yet to be assigned

   Base Stations Awarded via contract 0032: $1.00

5. Labor; to include 4 travel days for a single commitment of one week or 7 days for 3 technicians; 11 days total (21 day minimum applies) for 3 technicians or 63 working days

   Total for ~~63~~ 100 days ~~minimum~~ minimum @ $500 per day: ~~$ 1,600.00~~ $50000.00

6. Miscellaneous expenses: Travel, expedite fees, etc. $10,000.00

Four City Total: $130,358.00

Note: Our Company holds a Federal Supply Schedule with the US General Services Agency, or GSA. All products and service are available to be purchased through this contracting medium for ease of process.

Note: Should the four city plan be adopted for action, we would commence preparation immediately; anticipated start date roughly 30 from receipt of order; 7 days to completion.

Vendors
Federal Business Opportunities

# D -- Notice to Award AFRN

**General Information**

| | |
|---|---|
| Document Type: | Special Notice |
| Solicitation Number: | Reference-Number-W914NS-04-D-0005 |
| Posted Date: | Nov 22, 2004 |
| Original Response Date: | |
| Current Response Date: | |
| Original Archive Date: | |
| Current Archive Date: | |
| Classification Code: | D -- Information technology services, including telecommunications services |
| Naics Code: | 517212 -- Cellular and Other Wireless Telecommunications |

**Contracting Office Address**

Department of the Army, Project and Contracting Office, Project and Contracting Office, Iraq, Republican Presidential Compound APO, Baghdad, Iraq, AE, 09316

**Description**

The Project and Contracting Office, Baghdad, Iraq, increased the ceiling on the Indefinite Quantity/Indefinite Delivery, IDIQ, contract, W914NS-04-D-0005, from $75M to $150M to enable the simultaneous issuance of a Task Order to Build-Out of the Advanced First Responder Network, AFRN.

The AFRN system will provide Iraqi civil authorities, including fire, civil, and defense organizations with a national communications, command and control system. It will provide real-time reliable voice, video, and data communications throughout Iraq to first responders from

these organizations.

Technical experts from the Projects and Contracting Office, Baghdad, conducted market research in the August 2004 timeframe by assessing the complexity of the AFRN requirements and the ability of other sources to build-out the AFRN in additional Iraqi cities. While there are other sources that are operating in Iraq, all of these sources would need to supplement their existing workforce with personnel with the skills to implement the AFRN and develop their own network design. This would result in duplication of costs and delivery delays. Consequently, the Government?s technical expert determined that only Lucent can meet the Government?s urgent requirements.

The Iraqi Minister of Interior, the Commander of Coalition Forces in Iraq, and the United States National Security Advisor have all stated that the immediate implementation of the AFRN in 16 cities is vital to the national security of Iraq. Given the critical nature of security, especially in the wake of the transition of authority to a newly sovereign Iraq, any delay in implementing the AFRN in these 16 cities will significantly jeopardize the security to all personnel in Iraq. It is estimated that use of any source, other than Lucent, would result in delays of 6-9 months.

**Point of Contact**

Charles Clements, Support Contractor, Phone 703-343-9218, Fax 703-343-9227, Email charles.clements@cpa-iq.org

Register to Receive Notification

---

**Government-wide Numbered Notes**
**You may return to Business Opportunities at:**

- USA CPAIRAQ listed by [Posted Date]
- USA Agencywide listed by [Posted Date]

---

[Home] [SEARCH synopses] [Procurement Reference Library]

## SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS

*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30*

1. REQUISITION NO. W915WE43373803 — PAGE 1 OF 3
2. CONTRACT NO. GS-35F-0358M
3. AWARD/EFFECTIVE DATE 6 Dec 04
4. ORDER NO. W914NS-05-F-9027
5. SOLICITATION NO.
6. SOLICITATION ISSUE DATE
7. FOR SOLICITATION INFORMATION CALL ▶ a. NAME Robert Mueller email Robert.mueller@CPA-IQ.ORG
b. TELEPHONE NO. *(No collect calls)* 703-343-9222
8. OFFER DUE DATE/LOCAL TIME
9. ISSUED BY — CODE

PCO- Contracting Activity
Republican Presidential Compound
Baghdad, Iraq
APO AE 09316

10. THIS ACQUISITION IS ☒ UNRESTRICTED ☐ SET ASIDE: % FOR ☐ SMALL BUSINESS ☐ SMALL DISADV. BUSINESS ☐ 8(A)
SIC
SIZE STD
11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED ☐ SEE SCHEDULE
12. DISCOUNT TERMS **Net 30**
13a. ☐ THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)
13b. RATING
14. METHOD OF SOLICITATION ☐ RFQ ☐ IFB ☐ RFP
15. DELIVER TO — CODE

IN ACCORDANCE WITH CONTRACTOR PROPOSAL AND STATEMENT OF WORK

16. ADMINISTERED BY — CODE
Same as block 9

17a. CONTRACTOR/OFFEROR — CODE — FACILITY CODE

PRAECOMM
6310 Riverdale Street
San Diego Ca 92120

TELEPHONE NO. 619 239 5020 EMAIL GOVACCTS@PRAECOMM.COM

18a. PAYMENT WILL BE MADE BY — CODE

US Army Corps of Engineers Financial Center
Attn. CEFC-FP
5722 Integrity Drive
Millington, TN 38054-5005
Attn. Capt Malcrew Carver
PCO Comptroller Office 703 343 9246
cefc-POinvoices@usace.army.mil

17b. ☐ CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED ☐ SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | See addenda<br><br>Delivery 45 days ARO | | | | |

*(Attach Additional Sheets as Necessary)*

25. ACCOUNTING AND APPROPRIATION DATA
21 11 2004 1096.0103 P0 2004 CP CP01 011300 40044 25GY DR85294

26. TOTAL AWARD AMOUNT *(For Govt. Use Only)* $7,295,880.00

☐ 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED.

☐ 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA ☒ ARE ☐ ARE NOT ATTACHED.

☐ 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN 1 COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

☐ 29. AWARD OF CONTRACT: REFERENCE ______ OFFER DATED ______. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

30a. SIGNATURE OF OFFEROR/CONTRACTOR

31a. UNITED STATES OF AMERICA *(SIGNATURE OF CONTRACTING OFFICER)*
Kathy H. Lauden

30b. NAME AND TITLE OF SIGNER *(TYPE OR PRINT)*

30c. DATE SIGNED

31b. NAME OF CONTRACTING OFFICER *(TYPE OR PRINT)*
KATHY H. LAUDEN

31c. DATE SIGNED
6 Dec 04

32a. QUANTITY IN COLUMN 21 HAS BEEN ☐ RECEIVED ☐ INSPECTED ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED

33. SHIP NUMBER ☐ PARTIAL
34. VOUCHER NUMBER
35. AMOUNT VERIFIED CORRECT FOR
36. PAYMENT ☐ COMPLETE ☐ PARTIAL ☐
37. CHECK NUMBER

32b. SIGNATURE OF AUTHORIZED GOVT REPRESENTATIVE
32c. DATE

38. S/R ACCOUNT NO.
39. S/R VOUCHER NO.
40. PAID BY

41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT
41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER
41c. DATE

42a. RECEIVED BY *(Print)*
42b. RECEIVED AT *(Location)*
42c. DATE REC'D *(YY/MM/DD)*
42d. TOTAL CONTAINERS

W914NS-05-F-9027



| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | IN ACCORDANCE WITH ATTACHED STATEMENT OF WORK THE CONTRACTOR WILL SUPPLY AND INSTALL THE FOLLOWING ITEMS | | | | |
| 0001 | 8 Channel 100 Watt MPT3200 Single Site w/ network capability | 5 | Ea | $96,000.00 | $480,000.00 |
| 0002 | 6 Channel 100 Watt MPT3200 Single Site w/ network capability | 7 | Ea | $72,000.00 | $504,000.00 |
| 0003 | 6 Channel 100 Watt MPT3200 Single Site w/ network capability (Tikrit and Ramadi) | 2 | Ea | N/C | |
| 0004 | MPT3200 Portable Radio w/ Failsafe revert encryption and passcode protection | 11440 | Ea | $389.00 | $4,450,160.00 |
| 0005 | MPT3200 Portable Radio upgrade w/ Failsafe revert encryption and passcode protection | 1920 | Ea | $189.00 | $362,880.00 |
| 0006 | 220V Multi (6 unit) charger for portable | 1620 | Ea | $249.00 | $403,308.00 |
| 0007 | 220V Single charger for portable | 1720 | Ea | $2.50 | $38,700.00 |
| 0008 | Ultra high capacity NiMH Battery Portable | 11440 | Ea | $29.00 | $331,760.00 |
| 0009 | Cloning cable, portable radio | 50 | Ea | N/C | |
| 0010 | Windows bases programming software for portable radio | 15 | Ea | N/C | |
| 0011 | ACU-1000 W/3 DSP-2 Radio and network interface modules | 18 | Ea | $12,500.00 | $225,000.00 |
| 0012 | Shipping and Installation | 1 | Jb | $500,000.00 | $500,000.00 |

*(Attach Additional Sheets as Necessary)*

# MANDATORY SHIPPING DIRECTIONS

## PCO Logistics:

PCO Logistics is required to track equipment, materials and goods coming into Iraq under the Re-building Iraq effort. This tracking and inherent accountability process will assist in assuring that all equipment materials and goods are able to cross the borders and move to final destination with minimal delay and at reduced risk. However, in order to accomplish this mission, maximum cooperation is necessary. Prompt notification and compliance with our information requirements will assist in providing advance notice to the point of entry of all inbound shipments. This process affords coordination in the movement of all convoys which will enable improved monitoring and de-conflicted convoy schedule. Prompt notification also improves security coordination through the operations center.
To get started follow the following steps:

Step One:
Upon contract award the contractor is required to provide the necessary logistical information needed by PCO Logistics. This information can be provided and updated as necessary by going to the PCO website (http://www.rebuilding-iraq.net) and logging in by selecting "Contractor/Vendor Log In" under the Logistic heading. Initial log in will require the user to request a user name and password. Once the username and password is provided the user can identify and grant access to the other members or subcontractors. Should there be any problems with this process contact the Logistics Movement Coordination Center (LMCC) Watch Officer directly at the following e-mail address: pcolmcc@halliburton.com and the necessary assistance will be provided. If the interim process is still in place the contractor will find four (4) forms listed and available under the logistics heading (Logistics Information Requirements Form, Reconstruction Levy Exemption Form, Cargo Plaques and Logistical Support Request). Those forms should be individually completed and, with the exception of the cargo plaque, sent electronically to the above mentioned e-mail address for the LMCC. The first form submitted will be the Logistics Information Requirements Form. The Logistics Information Requirements Form should be completed upon award of contract and updated as necessary. All updates and changes to this form should be sent to the same e-mail address as the original form. Additional contact information is available on the website mentioned above. Always reference the contract number.

Step Two:
**CPA 1-47 CUSTOMS LEVY EXEMPTION AND SHIPMENT REQUIREMENTS FOR RECONSTRUCTION PROJECTS UNDER PROJECT AND CONTRACTING OFFICE (PCO)**

Effective 15 April 2004 Tariff Regulations pursuant to CPA Orders #54, as amended by Order #70 (Orders #54 and #70 are posted on the website), require commercial importations into Iraq to pay a 5% levy except for food, books, medicine, medical equipment, clothes and oil. Additional exemptions include NGO's, International Organizations, **Reconstruction Projects under PCO**, and single exempt donations. Items shipped under this contract are exempt from

this "Levy" provided a completed Reconstruction Levy Exemption Form is attached and included with each invoice and packing slip.

**The contractor is required to fill out the Reconstruction Levy Exemption Form and attach the duty free form to each shipment of goods under this contract that crosses the border into Iraq in order to qualify for the exemption. The contractor must submit one copy of the completed duty free form and a copy of the first page of the primary contract, (or customs verification, to the contracting officer and the PCO Logistics Office at pcocustoms@halliburton.com) 72 hours prior to the planned arrival date at the Iraq point of entry.**

Step Three:
The items being acquired are for Iraqi Reconstruction and as per the "Packing and Marking Instructions" of this contract, and shall be Packaged and Marked accordingly. Additionally, a Cargo Plaque is available from the website at http://www.rebuilding-iraq.net under the logistics tab located at the top of the page. There is a memorandum posted that explains how to complete the plaques. There are three plaques, one is for shipments arriving into Baghdad International Airport, one is for shipments arriving into the Port of Umm Qasr, and the third one is for all other shipments. The use of these plaques will ensure they are properly identified as PCO shipments and will reduce risk of loss or pilferage. Each shipment must have a cargo plaque affixed to all sides of each container, pallet, or package.

Step Four:
If this contract has the shipment bound for a PCO warehouse location and will require PCO Logistics to assist in the shipment from the point of entry into Iraq or material handling equipment support at the warehouse, a Logistical Support Request (LSR) must be completed and submitted 48 hours prior to expected movement of the shipment or its arrival at the point of entry. The LSR can be found at the above mentioned web site under the logistics tab.

It is the contractor's responsibility to provide all the requested information mentioned above as well as using the identified cargo plaques in sufficient time to allow for required delivery. Failure to comply with these instructions may result in a delay of the goods and materials being shipped from arriving at their final destination. Delays resulting from failure to follow the above steps may be assigned as the contractor's responsibility.

# Statement of Work
# For
# Conversion to Trunked Radio Network
# For
# Iraqi Police Services

## A. General

The purpose of this effort is to convert radio systems in 12 cites from standard analog to trunked radio systems thereby supporting the expansion of the IPS to 145,000. With the current analog systems operating in the designated cities, the police will have insufficient bandwidth and channel allocations. In addition, this upgrades the security by allowing captured radios to be excluded from the network. The network also includes a capability to interface and trunk to other radio systems.

## B. Background

Over the past year, the coalition has installed ARI analog radio systems in a number of cites in Iraq to support the Iraqi Police Service. These radio systems were originally designed to provide initial support for a force of 85,000 officers. The radios were to be replaced in June 2004 with the Advanced First Responders Network. That network has been delayed and descaled to the point where it will cover fewer cities and not be in place until June 2005. As a result of the police force expansion to 135,000 officers, the current radio systems will not be sufficient to support the expanded requirements. Additionally, the system will need to become a long term solution given that the AFRN will not be put into many cities. The solution is to upgrade the existing analog system to a trunked radio network.

In addition to adding capacity, the trunked system increases the security of the network by allowing the compromised stations to be shut off from the network.

## C. Requirements

1. The Vendor will provide 8 Channel 100 Watt MPT3200 Single Site trunked radio systems with network capability for 5 cities: Samarra, Kirkuk, As Sulaymaniyah, Al Kut, Al Fallujah. The systems must be compatible with existing ARI MPT3200 portable (hand held), mobile, and base station radios.
2. The vendor will provide 6 Channel 100 Watt MPT3200 Single Site trunked radio systems with network capability for 9 cities: Al Huwayjah, Altun Kupri, Daquq, Dibs, Layan. Ryad, Abbasiyah, Tikrit and Ramadi. The systems must be compatible with existing ARI MPT3200 portable (hand held), mobile and base station radios/
3. The vendor will provide MPT3200 upgrades to 1920 existing ARI portable (hand held) radios with encryption, and passcode protection.

4. The vendor will provide an additional 11440 MPT 3200 portable radios with encryption and passcode protection.
5. The vendor will provide 1620 220 Volt multi-unit (6 unit) chargers for portable radios.
6. The vendor will provide 1720 220 Volt single unit chargers for portable radios.
7. The vendor will provide 11440 ultra high capacity NIMH back up batteries for the portable radios.
8. The vendor will provide 50 cloning cables for the portable radios.
9. The vendor will provide 15 copies of Windows based programming software for the portable radios.
10. The vendor will provide 18 ACU-1000 with 3 DSP-2 Radio and Network Interface modules. These systems will be used to connect other radio networks to the trunking system. At least one channel of these systems will be provided with Transcrypt 460 series encryption capabilities. One of these systems will be included in each of the radio networks provided under this statement of work. The additional four will be provided to the four ARI trunked radio systems already installed.
11. The vendor will program existing portable, mobile and base station radios to operate on the installed trunked networks.
12. The vendor will install additional existing government owned base stations on the trunked networks.
13. The vendor will provide engineering, project management and support as needed to install and establish the trunked radio systems.
14. The vendor will provide periodic (weekly) status reports to the CPATT C-6 for the duration of the project.
15. All systems must be installed and functional within 60 days of the award of the project.

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

1. CONTRACT ID CODE | PAGE 1 OF 1 PAGES

2. AMENDMENT/MODIFICATION NO. P00001
3. EFFECTIVE DATE 26 Jan 05
4. REQUISITION/PURCHASE REQ. NO.
5. PROJECT NO. *(If applicable)* N/A

6. ISSUED BY CODE

PCO - CONTRACTING ACTIVITY
REPUBLICAN PRESIDENTIAL COMPOUND
BAGHDAD, IRAQ
APO AE 09316
MSgt Solomon V. Porter
Email: solomon.porter@CPA-IQ.ORG

7. ADMINISTERED BY *(If other than Item 6)* CODE

8. NAME AND ADDRESS OF CONTRACTOR *(NO., street, city, county, State, and ZIP Code)*
PRAECOMM
6310 Riveerdale Street
San Diego Ca 92120
TELEPHONE NO. 619 239 5020 EMAIL: GOVACCTS@PRAECOMM.COM

9a. AMENDMENT OF SOLICITATION NO.

9b. DATED *(SEE ITEM 11)*

10a. MODIFICATION OF CONTRACT/ORDER NO.
**W914NS-05-F-9027**

10b. DATED *(SEE ITEM 13)*
6 Dec 04

CODE: FACILITY CODE:

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

[ ] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [ ] is extended, [ ] is not extended
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or(c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. Accounting And Appropriation Data *(If required)*

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| | |
|---|---|
| X | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.<br>43.202 -- Authority to Issue Change Orders |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b) |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER *(Specify type of modification and authority)* MUTUAL AGREEMENT |

E. IMPORTANT: Contractor [X ] is not, [ ] is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*
The purpose of this modification is to incorporate changes to the Statement of Work (SOW).
A. Replace Section C, paragraph 2 of the SOW with the following: ***"The vendor will provide 6 channel 100 Watt MPT3200 Single Site trunked radio systems with network capability for 8 cities: Tikrit, Ramadi, Dahuk, Irbil, Baqubah, Al Amarah, An Nasariyah, and As Samawah. One additional system will be held as operational reserve by CPATT, C-6. The Systems must be compatible with existing ARI MPT3200 portable (hand held), mobile and base station radios."***
B. All other terms and conditions remain unchanged

15A. NAME AND TITLE OF SIGNER *(Type or print)*

16A. NAME OF CONTRACTING OFFICER
SOLOMON V. PORTER

15B. NAME OF CONTRACTOR/OFFEROR
BY ____________________
*(Signature of person authorized to sign)*

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA
BY ____________________
*(Signature of Contracting Officer)*

16C. DATE SIGNED
26 Jan 05

NSN 7540-01-152-8070 – Electronically Reproduced
PREVIOUS EDITION UNUSABLE

PerFORM (DLA)

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

| | MPT3200 (6 CH) | MPT3200 (6 CH) | PST256 | PK-STII | PST-BANK | PST-SC | PST-BATT | PST-PROG | PST-SOFT | ACU-1000 | Ship/Install | $$$ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SO-9027-1 | 0 | 0 | 0 | 1920 | 0 | 0 | 0 | 20 | 20 | 0 | 0 | $ 362,880.00 |
| SO-9027-5 (not invoiced) | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $ 144,000.00 |
| SO-9027-4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 0 | $ 225,000.00 |
| SO-9027-3 | 5 | 9 | 11440 | 0 | 1620 | 1720 | 11440 | 0 | 0 | 0 | 0 | $ 6,208,000.00 |
| Unadjusted amount 9027 | | | | | | | | | | | | |
| | | | | | | | | | | | | $ 9,708,400.00 |
| non-GSA pricing | | | | | | | | | | | | $ 6,795,880.00 |
| Discounted price for equipment | | | | | | | | | | | | |
| | | | | | | | | | | | | $ 2,912,520.00 |
| Difference/Equitable adjustment amount | | | | | | | | | | | | |
| Unadjusted amount 9001 | | | | 1502 | | | $ 189.00 | | | | | |
| | | | | | | | | | | | | $ 405,540.00 |
| non-GSA pricing | | | | | | | | | | | | $ 283,878.00 |
| Discounted price for equipment | | | | | | | | | | | | |
| | | | | | | | | | | | | $ 121,662.00 |
| Difference/Equitable adjustment amount | | | | | | | | | | | | |
| Unadjusted amount 2-6 channel systems | | | | | | | | | | | | |
| | | | | | | | | | | | | $ 205,714.29 |
| non-GSA pricing | | | | | | | | | | | | $ 144,000.00 |
| Discounted price for equipment | | | | | | | | | | | | |
| | | | | | | | | | | | | $ 61,714.29 |
| Difference/Equitable adjustment amount | | | | | | | | | | | | |
| Unadjusted amount 2-6 channel systems | | | | | | | | | | | | |
| | | | | | | | | | | | | $ 144,000.00 |
| Discounted price for equipment-non invoiced | | | | | | | | | | | | |
| Storage Fees | | | | | | | | | | | | |
| | | | | | | | | | | | | $ 277,508.00 |
| Totals | | | | | | | | | | | | |
| Discounted or non-invoiced totals | | | | | | | | | | | | |
| | | | | | | | | | | | | $ 3,517,402.29 |
| Totals | | | | | | | | | | | | |

**Amrad Cost**

| Qty | Description | cost per unit | total |
|---|---|---|---|
| 20000 | MPT3200 Portable Radios | $ 140.00 | $ 2,800,000.00 |
| 20000 | Speaker Microphones | $ 8.00 | $ 160,000.00 |
| 20000 | Cases | $ 8.00 | $ 160,000.00 |
| 20000 | Ultra High Cap Batteries | $ 10.00 | $ 200,000.00 |
| 20000 | System programming for 20,000 portable radios | $ - | $ - |
| 5000 | MPT3200 Mobile Radios (average historical pricing) | $ 230.00 | $ 1,150,000.00 |
| 500 | MPT3200 Base Station Radio (average historical pricing) | $ 730.00 | $ 365,000.00 |
| 2800 | 220V 6-Unit Chargers | $ 85.00 | $ 238,000.00 |
| 3200 | 220V Single Unit Chargers | $ - | $ - |
| 20 | Eight Channel MPT3200 Single Site Systems | $ 60,568.00 | $ 1,211,360.00 |
| 20 | System programming for 20 single site systems | $ - | $ - |
| 20 | ACU-1000 Encryption Interface to Transcrypt 460 Technology | $ 9,201.25 | $ 184,025.00 |
| 1 | Shipping factored at 10% gross | $ 628,436.00 | $ 628,436.00 |
| | | Total | $ 7,096,821.00 |

**PCO Pricing**

| Qty | Description | resale price per unit | total |
|---|---|---|---|
| 20000 | MPT3200 Portable Radios | $ 389.00 | $ 7,780,000.00 |
| 20000 | Speaker Microphones | $ 49.00 | $ 980,000.00 |
| 20000 | Cases | $ 39.00 | $ 780,000.00 |
| 20000 | Ultra High Cap Batteries | $ 29.00 | $ 580,000.00 |
| 20000 | System programming for 20,000 portable radios | $ 25.00 | $ 500,000.00 |
| 5000 | MPT3200 Mobile Radios (average historical pricing) | $ 1,149.00 | $ 5,745,000.00 |
| 500 | MPT3200 Base Station Radio (average historical pricing) | $ 2,999.00 | $ 1,499,500.00 |
| 2800 | 220V 6-Unit Chargers | $ 249.00 | $ 697,200.00 |
| 3200 | 220V Single Unit Chargers | $ 22.50 | $ 72,000.00 |
| 20 | Eight Channel MPT3200 Single Site Systems | $ 120,000.00 | $ 2,400,000.00 |
| 20 | System programming for 20 single site systems | $ 5,000.00 | $ 100,000.00 |
| 20 | ACU-1000 Encryption Interface to Transcrypt 460 Technology | $ 21,000.00 | $ 420,000.00 |
| 1 | Shipping | | |
| | | Total | $ 21,553,700.00 |
| | | Profit | $ 14,456,879.00 |