**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRAECOMM, INC d/b/a AMERICAN RADIO<br>Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-54C |
| | ) | (Judge Lettow) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DECLARATION OF ROBERT SILE**

I, Robert Sile, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct to the best of my knowledge.

1. I am currently employed by Eastman Kodak Company as an Information Technology Architect. I am also an officer in the U.S. Army Reserve currently assigned to HHC, 7th Brigade, 98th Division (IT). I was deployed with HHC, 98th Division (IT) and assigned to the Multi-National Security Transition Command – Iraq ("MNSTC-I") in Baghdad, Iraq from October 16, 2004 until November 21, 2005. During my tour in Iraq, I was assigned to the Civilian Police Assistance and Training Team ("CPATT"). The CPATT is a subordinate organization of MNSTC-I. The CPATT's mission is to organize, train, and equip the Iraqi Police Forces. From October 23, 2004 thru December 1, 2004, I was the Deputy C-6 (Officer in Charge of Communications) for the CPATT. From December 1, 2004 until September 15, 2005, I was *the* CPATT C-6. From September 16, 2005 until November 21, 2005, I was the CPATT Special Advisor to the Iraqi Ministry of Interior ("MoI") focused on the Ministry's Communications & Computer Department. As the CPATT C-6, I was the staff officer responsible for planning and executing communications and automation for CPATT personnel and for

MoI security forces. This included the engineering of secure & non-secure communications and automation (computer) systems, the procurement of hardware, installation, training, and operation & maintenance of the installed systems. The fielded communications systems included voice and data capability on all levels – from the national down to the local level. The "First Responder Network" ("FRN") system was one component of those voice systems to have been fielded to the Iraqi security and EMS forces. The engineering work I performed included the selection of the appropriate technology, the deconflicting of radio frequencies with the U.S. Department of State ("DoS") frequency manager in Iraq, and the integration (if appropriate) with other systems fielded by US and Coalition forces to Iraqi security forces.

2. I was not directly involved in the formation of Contract 9001 or Contract 9027. Contract 9001 was signed just prior to my arrival in Iraq. Although I was at the CPATT in December of 2004, I was not involved in the formation of Contract 9027. The awarding of that contract was coordinated by the J-6 at MNSTC-I. The J-6 was the counterpart to my office at the higher headquarters. During November and December of 2004, I was focused on planning and providing communications support for the upcoming Iraqi national elections. The previous CPATT C-6, LTC Erik Fretheim, had been involved in the discussions leading up to Contract 9027 and he had transferred to the J-6 offices within MNSTC-I for the last two weeks of his deployment in the second half of December 2004. Therefore, that contracting action was handled by the J-6 office within MNSTC-I since they had personnel familiar with the contractor, the contract solicitation, and the engineering and aims of the contracts.

3. Although I was not involved in the formation of Contract 9001 or Contract 9027, I was aware of the cities where PraeComm's FRN radio systems were going to be

installed. Until late January, 2005, I planned on PraeComm's radios being installed in the Iraqi cities that were specified in those contracts. However, in late-January 2005, I was notified by the U.S. Department of State that the larger and more complicated "Advanced First Responder Network" ("AFRN") would now be installed in some of the cities where we had previously planned to install PraeComm's FRN radio system. I was also told at this time that this new list of AFRN cities was definite and I therefore expected few changes. Many of the cities on this new list were not on the previous AFRN list. The new list now included several cities where we had previously planned on installing the PraeComm FRN radios.

4. I recognized that it was both wasteful and redundant to have both the AFRN system and PraeComm's FRN system in the same cities, while other Iraqi cities went without any radio system. Consequently, I made the decision to shift the cities where PraeComm's radio were originally planned to be installed in order to ensure that the Iraqi Police Service would have radio capabilities in other cities that would not have had such a capability otherwise. I made this decision to ensure that the largest Iraqi cities that were not planned to fall under AFRN, would at least receive FRN capability. This decision was driven by my desire to provide communication systems in a manner that would provide radio capability to protect the greatest number of Iraqi citizens.

5. When I informed PraeComm's president, Mr. DiLuigi, of the change in cities, he objected to it and claimed that this was going to negatively affect his business. Mr. DiLuigi informed me of his business plans to leverage the radio infrastructure of FRN for future business opportunities with the Iraqis. I responded by explaining that this was the first I had ever heard of any such business plan. I also stated that, while I now understood that Mr. DiLuigi was planning on leveraging his radio systems for future business

opportunities, his company was selected in order to rapidly supply the Iraqi Police and other first responders with handheld radio capability. I explained to Mr. DiLuigi that the shift in cities resulted from new changes to the AFRN fielding plan and that the CPATT had to ensure that the FRN radios were fielded to cities that would not have any communications system otherwise. I explained that the CPATT was not in charge of the AFRN fielding plan and that the CPATT had to align its plans for providing communications support in light of the larger communications plan for Iraq being implemented by the U.S Department of State. Despite these explanations, Mr. DiLuigi objected and insinuated that this was merely an attempt to force a smaller business out of the contracting picture. I repeated several times that I was not aware of any such attempt and that CPATT's communication plan had to integrate into the national communications plan.

6. I did not sign off on the DD-250 "Material Inspection and Receiving Report" for either Contract 9001 or 9027. I was surprised when I heard that the Government had paid PraeComm for the labor CLINs associated with these contracts. While PraeComm did deliver the radio handsets specified in the contracts, PraeComm never installed the radio systems nor did they (or CPATT) ever field the radios to the security forces in the Iraqi cities as specified in the contracts.

Robert J. Sile

ROBERT SILE

28 FEB 2007

DATE