**Statement of Work**
**For**
**Conversion to Trunked Radio Network**
**For**
**Iraqi Police Services**

## A. General

The purpose of this effort is to convert radio systems in 12 cites from standard analog to trunked radio systems thereby supporting the expansion of the IPS to 145,000. With the current analog systems operating in the designated cities, the police will have insufficient bandwidth and channel allocations. In addition, this upgrades the security by allowing captured radios to be excluded from the network. The network also includes a capability to interface and trunk to other radio systems.

## B. Background

Over the past year, the coalition has installed ARI analog radio systems in a number of cites in Iraq to support the Iraqi Police Service. These radio systems were originally designed to provide initial support for a force of 85,000 officers. The radios were to be replaced in June 2004 with the Advanced First Responders Network. That network has been delayed and descaled to the point where it will cover fewer cities and not be in place until June 2005. As a result of the police force expansion to 135,000 officers, the current radio systems will not be sufficient to support the expanded requirements. Additionally, the system will need to become a long term solution given that the AFRN will not be put into many cities. The solution is to upgrade the existing analog system to a trunked radio network.

In addition to adding capacity, the trunked system increases the security of the network by allowing the compromised stations to be shut off from the network.

## C. Requirements

1. The Vendor will provide 8 Channel 100 Watt MPT3200 Single Site trunked radio systems with network capability for 5 cities: Samarra, Kirkuk, As Sulaymaniyah, Al Kut, Al Fallujah. The systems must be compatible with existing ARI MPT3200 portable (hand held), mobile, and base station radios.
2. The vendor will provide 6 Channel 100 Watt MPT3200 Single Site trunked radio systems with network capability for 9 cities: Al Huwayjah, Altun Kupri, Daquq, Dibs, Layan. Ryad, Abbasiyah, Tikrit and Ramadi. The systems must be compatible with existing ARI MPT3200 portable (hand held), mobile and base station radios/
3. The vendor will provide MPT3200 upgrades to 1920 existing ARI portable (hand held) radios with encryption, and passcode protection.

4. The vendor will provide an additional 11440 MPT 3200 portable radios with encryption and passcode protection.
5. The vendor will provide 1620 220 Volt multi-unit (6 unit) chargers for portable radios.
6. The vendor will provide 1720 220 Volt single unit chargers for portable radios.
7. The vendor will provide 11440 ultra high capacity NIMH back up batteries for the portable radios.
8. The vendor will provide 50 cloning cables for the portable radios.
9. The vendor will provide 15 copies of Windows based programming software for the portable radios.
10. The vendor will provide 18 ACU-1000 with 3 DSP-2 Radio and Network Interface modules. These systems will be used to connect other radio networks to the trunking system. At least one channel of these systems will be provided with Transcrypt 460 series encryption capabilities. One of these systems will be included in each of the radio networks provided under this statement of work. The additional four will be provided to the four ARI trunked radio systems already installed.
11. The vendor will program existing portable, mobile and base station radios to operate on the installed trunked networks.
12. The vendor will install additional existing government owned base stations on the trunked networks.
13. The vendor will provide engineering, project management and support as needed to install and establish the trunked radio systems.
14. The vendor will provide periodic (weekly) status reports to the CPATT C-6 for the duration of the project.
15. All systems must be installed and functional within 60 days of the award of the project.

**INTERROGATORY NO. 3:**

Identify and describe in detail all statements, whether written or oral, made by the plaintiff to any representative of the United States, suggesting or asserting that plaintiff was offering equipment under Contract 9001 and/or 9027 at a discount based on its belief that the equipment would be installed in cities identified in either Contracts 9001 and 9027.

**PRAECOMM'S RESPONSE:**

Praecomm objects to Interrogatory No. 3's request to identify "all statements, whether written or oral, made by the Plaintiff to any representative of the United States," relating to the discounts with respect to contracts 9001 and 9027. Such statements were made in the course of negotiations with the government in a time period of several months relating to two separate contracts. Requiring Plaintiff to identify "all statements, whether written or oral" made over this lengthy time period is unduly burdensome. Without waiver and subject to the above objection and its general objections, Plaintiff responds as follows:

Discussion between Praecomm and LTC Fretheim began for a long term "solution" to replace the First Responder radio portion of the Advanced First Responder Network (AFRN), to a communication need in the initial six cities, four of which lead to contract 9001. Defendant presented the list of the six cities to Plaintiff and requested that Plaintiff develop a comprehensive communication solution based on the city list and Plaintiff's understanding of those cities as it had done extensive work in and around those cities in the past.

Plaintiff proposed the type of solution, numbers for initial outlay, and all other particulars to the Defendant in a document presentation labeled "IFRN Trunking Introduction and

Continuation Proposal." On page 5 of 5, Plaintiff outlined the prices in its proposal for "Six City Program information requested by LTC Fretheim."

Fretheim reviewed the IFRN Trunking Introduction and Continuation Proposal and set up a meeting where Dominic Di Luigi and Shawn Campbell made the presentation to Colonel John Graham and Fretheim. Graham verbally signed off on the plan for the six cities and said "That's enough Dom. I'm sold…you guys are the only game in town," or words to that effect.

At a later date, Fretheim identified a budget of less then $400,000 and asked if Plaintiff would be willing and able to make its proposal work in at least 4 of the 6 cities, that he urgently needed coverage in, with the understanding that if those cities went well, he would want to secure budgeting to and assign Praecomm at least 12 more cities to the FRN program. Based on the proposed budget and need to outfit those 4 cities, Plaintiff developed a discounted price, with the same solution and proposed implementation schedule.

At no time did the Multi-National Security Transition Command-Iraq Civilian Police Assistance Training Team (MNSTCI/CPATT) ever indicate how many units of any item or the type of technology they would like Praecomm to present a price on as would be the case in a standard equipment order. Defendant requested that Praecomm engineer a comprehensive solution in the four cities Defendant needed urgent coverage in and to provide a solution within Defendant's $400,000 budget. All engineering ideas regarding the use of networking technology, trunking protocol, network system security, usability, etc., were originally presented to Defendant by Plaintiff and were accepted and contracted for with no exceptions, minus budgetary pricing.

The focus of Defendant's request was based not on the number of pieces of equipment but instead on Plaintiff providing its MPT3200 networks in four cities, in return for designing a plan within Defendant's budget. For purposes of reference, see the specific wording of the Four City Technology Demonstration Trunking Upgrade Proposal along with the 6 city proposal contained in "Six City Program information requested by LTC Fretheim."

Based on the four city template, Defendant presented Praecomm with another 12 cities (again, list of cities provided by Fretheim) under the exact same concept and with certain budget limitations.

There were several verbal exchanges suggesting or asserting that plaintiff was offering equipment under Contract 9001 and/or 9027 at a discount, including the following:

a. Di Luigi discussed on more then one occasion with Fretheim his desire to outfit a list of cities with Praecomm networked technology for a long term, permanent solution to replace the First Responder Radio portion of AFRN which, in the Plaintiff's understanding, was having a series of problems getting to the implementation stage. Plaintiff has recently discovered that the AFRN program was never "delayed [or] descaled" in any way even prior to contract 9027 having been issued.

b. Di Luigi and Fretheim discussed the overall program on the lines of understanding that, at that point, there would be funding limitations for FRN until the program