**No. 06-54C**
**(Judge Lettow)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**PRAECOMM, INC., d/b/a AMERICAN RADIO,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**PETER D. KEISLER**
**Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**BRIAN M. SIMKIN**
**Assistant Director**

**GREGG M. SCHWIND**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**U.S. Department of Justice**
**1100 L Street, N.W.**
**Washington D.C. 20530**
**Tel: (202) 353-2345**
**Fax: (202) 514-8624**
**Attorneys for Defendant**

**OF COUNSEL:**

**KEVIN ROBITAILLE**
**Litigation Attorney**
**U.S. Army Litigation Division**
**901 N. Stuart Street**
**Arlington, VA 22203**

**May 16, 2007**

TABLE OF CONTENTS

REPLY MEMORANDUM .....1

INTRODUCTION .....1

ARGUMENT .....2

I. The Army Did Not Breach Contracts 9001 and 9027 By Deciding Not To Order PraeComm To Install Its Equipment .....2

A. The Army Did Not Have A Duty To Allow PraeComm To Install Its Equipment .....2

B. PraeComm Has Failed To Allege It Incurred Additional Costs Of Contract Performance By Virtue Of Having Its Performance Reduced .....4

C. PraeComm Did Not Bargain For Or Receive Requirements-Type Contracts .....5

D. The Names Of The Cities In PraeComm's Contracts Are Not Superfluous .....8

E. PraeComm's Winstar-Based Theory of Lost Profits Does Not Apply In The Context Of Its Fixed Quantity, Fixed Price Contracts .....11

F. The Lost Profits Claimed By PraeComm Are From "Collateral Undertakings," Not The Contracts In Question .....13

II. By Definition, A Deductive Change Cannot Be A Compensable Change .....15

III. The Army Did Not Violate Its Implied Covenant Of Good Faith And Fair Dealing .....17

CONCLUSION .....20

# TABLE OF AUTHORITIES

## CASES


Ace Constructors, Inc. v. United States,
70 Fed. Cl. 253 (2006) ..........16

Applied Companies v. Harvey,
456 F.3d 1380 (Fed. Cir. 2006)..........8

AT & T Communications, Inc. v. WilTel, Inc.,
1 F.3d 1201 (Fed. Cir. 1993)..........16

Beta Sys., Inc. v. United States,
838 F.2d 1179 (Fed. Cir. 1988)..........10

Boehm v. United States,
22 Cl. Ct. 511 (1991) ..........7

Bradley v. Chiron Corp.,
136 F.3d 1317 (Fed. Cir. 1998)..........19

Cal. Fed. Bank FSB v. United States,
245 F.3d 1342 (Fed. Cir. 2001)..........14

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)..........19

Comprehensive Care Corp. v. RehabCare Corp.,
98 F.3d 1063 (8th Cir. 1996) ..........19

Dalton v. Cessna Aircraft Co.,
98 F.3d 1298 (Fed. Cir. 1996)..........12

Fausto v. United States,
16 Cl. Ct. 750 (1989) ..........7

George Hyman Constr. Co. v. United States,
832 F.2d 574 (Fed. Cir. 1987)..........7

Glendale Fed. Bank v. United States,
239 F.3d 1374 (Fed. Cir. 2001)..........12

Granite Constr. Co. v. United States,
962 F.2d 998 (Fed. Cir. 1992)..........16

Greco v. Dept. of Army,
852 F.2d 558 (Fed. Cir. 1988)....................................................................7

Hansen Bancorp v. United States,
367 F.3d 1297 (Fed. Cir. 2004)..................................................................13

Huna Totem Corp. v. United States,
35 Fed. Cl. 603 (1996) ..............................................................................7

Hunt Const. Group, Inc. v. United States,
281 F.3d 1369 (Fed. Cir. 2002)....................................................................9

Indiana-Michigan Power Co. v. United States,
422 F.3d 1373 (Fed. Cir. 2005)..................................................................13

King Fisher Marine Service, Inc. v. United States, ,
16 Cl. Ct. 231 (1989) .................................................................................7

Jowett, Inc. v. United States,
234 F.3d 1365 (Fed. Cir. 2000) .................................................................10

L.W. Matteson v. United States,
61 Fed. Cl. 296 (2004) ..............................................................................9

M.A. DeAtley Constr., Inc. v. United States,
75 Fed. Cl. 575 (2007) ..............................................................................16

Massie v. United States,
166 F.3d 1184 (Fed. Cir. 1999)....................................................................6

McAbee Constr., Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996)....................................................................10

National Australia Bank v. United States,
452 F.3d 1321 (Fed. Cir. 2006)..................................................................19

NVT Technologies, Inc. v. United States,
370 F.3d 1153 (Fed. Cir. 2004)..................................................................10

Old Stone Corp. v. United States,
450 F.3d 1360 (Fed. Cir. 2006)..................................................................12

Overstreet Electric Co., Inc. v. United States,
59 Fed. Cl. 99 (2003) ................................................................................9

PCL Constr. Svcs. v. United States,
47 Fed. Cl. 745 (2000) ....................................................................................11

Peterson-Sharpe Engin. Corp. v. United States,
6 Cl. Ct. 288 (1984) .........................................................................................7

Precision Pine & Timber, Inc. v. United States,
72 Fed. Cl. 460 (2004) ..............................................................................13, 14

Ramsey v. United States,
121 Ct. Cl. 426, 101 F. Supp. 353 (1951)........................................................14

Rumsfeld v. Applied Companies, Inc.,
325 F.3d 1328 (Fed. Cir. 2004).........................................................................5

San Carlos Irrigation & Drainage Dist. v. United States,
877 F.2d 957 (Fed. Cir. 1989).................................................................2, 4, 13

Southern California Edison v. United States,
58 Fed. Cl. 313 (2003) ....................................................................................18

State of Alaska v. United States,
35 Fed. Cl. 685 (1996) ...................................................................................19

Travelers Cas. & Sur. Co v. United States,
74 Fed. Cl. 75 (2006) .....................................................................................16

Trauma Serv. Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997) .................................................................3, 4, 6

United States v. Winstar Corp.,
518 U.S. 839 (1996)........................................................................................12

Wells Fargo Bank N.A. v. United States,
88 F.3d 1012 (Fed. Cir. 1996)..........................................................................13

Westfed Holdings v. United States,
407 F.3d 1352 (Fed. Cir. 2005)........................................................................12

White Buffalo Constr., Inc. v. United States,
52 Fed. Cl. 1 (2002) ........................................................................................17

Winstar Corp. v. United States,
64 F.3d 1531 (Fed. Cir. 1995), aff'd, 518 U.S. 839 (1996)..................................3, 11

STATUTES AND REGULATIONS

48 C.F.R. § 2.101 ........................................................................................................7

48 C.F.R. § 12.301(b)(3)..........................................................................................3, 17

48 C.F.R. § 16.503 ......................................................................................................5

48 C.F.R. § 52.212-4(l) ............................................................................................4, 17

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRAECOMM, INC., d/b/a AMERICAN RADIO, Plaintiff, | ) | |
| v. | ) | No. 06-54C (Judge Lettow) |
| THE UNITED STATES, Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The material facts underlying the United States' motion for summary judgment are straightforward. The Army contracted with PraeComm to: (1) provide a fixed quantity of radio equipment meeting certain specifications; and (2) install the equipment in various cities in Iraq and train end users. After PraeComm delivered the radio equipment to Baghdad, the Army elected to hold the equipment in a warehouse instead of ordering its immediate installation in the cities named in the contracts. This decision necessarily reduced the work PraeComm was required to perform under the contracts, whether this reduction is characterized as a breach, a change, or a constructive termination for convenience. Nonetheless, the Army paid PraeComm the full contract price under both contracts. Under these circumstances, PraeComm's claim for reimbursement above and beyond the fixed contract prices must fail.

PraeComm asserts in its opposition that there are several disputed issues related to contract interpretation, the parties' intent, and lost profits that preclude summary judgment. Pl.

Br. at 24-33. As explained below, PraeComm carefully avoids the only facts that are material in this case and fails to respond to many of our arguments as to why PraeComm's theories of recovery are unavailable as a matter of law. Summary judgment is therefore appropriate.

## ARGUMENT

### I. The Army Did Not Breach Contracts 9001 and 9027 By Deciding Not To Order PraeComm To Install Its Equipment

PraeComm argues in its brief that the United States has misrepresented its breach claim. Pl. Br. at 21. PraeComm now states that the Army did *not* breach the contracts by not installing the radio equipment, but by *not allowing PraeComm* to install its equipment. Id. at 21-24. At the outset, we did not misrepresent anything. PraeComm repeatedly alleged in its complaint that the Government breached the contracts "by not installing PraeComm's FRN equipment in the specified major Iraq cities." Compl. ¶¶ 63, 65, 70, 72, 82, 90, 99, 109. PraeComm now agrees that there is no term in either contract requiring the United States to install any of plaintiff's radio equipment. Pl. Br. at 21-22. But while plaintiff now clarifies the nature of the alleged breach, PraeComm continues to confuse the issue by reiterating elsewhere in its brief that the Government breached the contract by not installing PraeComm's equipment. See, e.g., Pl. Br. at 26-27, 29. However, this confusion is not material to our motion because, as explained below, PraeComm is not entitled to damages no matter how it frames its breach claim.

#### A. The Army Did Not Have A Duty To Order PraeComm To Install Its Equipment

It is hornbook law that, to recover for breach of contract, a party must allege and establish, among other things, (1) an obligation or duty arising out of the contract, and (2) a breach of that duty. See San Carlos Irrigation & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989). Regarding the first issue, whether an express contract creates a duty is a

legal question of contract interpretation. Id. With respect to the second issue, a breach of contract is a failure to perform a contractual duty when it is due. Winstar Corp. v. United States, 64 F.3d 1531, 1545 (Fed. Cir. 1995), aff'd, 518 U.S. 839 (1996). Consequently, it follows that, if a contract does not impose the particular duty at issue, there can be no breach. See Trauma Serv. Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997).

Here, PraeComm's breach claim fails because it does not allege any contractual duty that the Army failed to perform. As noted above, PraeComm contends that the Army had a duty under Contracts 9001 and 9027 to "*allow* PraeComm to install the equipment that had been delivered," and that the Army breached that duty by "refusing to allow" PraeComm to "perform installations in the cities included in the Contracts." Pl. Br. 21-22 (emphasis added).

This argument can be dismissed for two reasons. First, PraeComm fails to identify any specific term in either contract that imposes such a duty upon the United States. Although PraeComm emphasizes that both contracts listed the specific cities in which its equipment was to be installed, the plain terms of those provisions established PraeComm's responsibilities, not any duty on the Army's part. See, e.g., A 144 ("CONTRACTOR RESPONSIBILITIES . . . 5.2 Will provide distribution and installation of the radios at the designated sites."); A 154 (under "Requirements", stating that the "Vendor will provide" radio equipment in specified cities).

More fundamentally, PraeComm's argument misconstrues the nature of the Government's obligations when it procures goods and services. Contrary to PraeComm's novel position, while the Government always has a right to have contract work performed as specified, it is not *obligated* to allow a contractor to perform the work under all circumstances, at the pain of paying damages for breach. A shown in our opening brief, both contracts incorporated the "termination for convenience" clause in FAR section 52.212.4. See 48 C.F.R. § 12.301(b)(3)

and 52.212-4(l) (termination for convenience). Under FAR section 52.212-4(l), the United States reserved its right to terminate the contract work, "or any part" thereof, "for its sole convenience." Consequently, if the Army had the right to terminate the work under Contracts 9001 and 9027 in whole or in part, it necessarily follows that the Army did not have a "duty to allow" PraeComm to install any equipment. Not owing such a duty to PraeComm, the Army did not breach the contracts. See Trauma Serv. Group, 104 F.3d at 1326.

**B. PraeComm Has Failed To Allege It Incurred Additional Costs Of Contract Performance By Virtue Of Having Its Performance Reduced**

Even assuming for argument's sake that the Army was contractually obligated to install PraeComm's equipment, it is further settled that, to recover for breach of contract, a party must allege and establish damages caused by the breach. See San Carlos, 877 F.2d at 959.

Here, PraeComm never responds to the difficult – and material – fact that the express terms of both Contract 9001 and Contract 9027 required and separately compensated plaintiff to field, install, and train users on its equipment. The Army agreed in CLIN 0003 of Contract 9001 to pay plaintiff an additional $50,000 for the labor necessary to perform the installation and training tasks (A 140, 146); similarly, the Army agreed in CLIN 0012 of Contract 9027 to pay an additional $500,000 for installation and training (A 150). We agree that the Government never ordered performance of the installation and training tasks the Government bargained for after delivery of the equipment to Baghdad. A 140, 150. However, this necessarily means that PraeComm "suffered" only a *reduction* in the work required under its contracts. PraeComm has failed to allege – and it is difficult to conceive – how it incurred additional costs of contract performance by virtue of having its performance reduced. For this reason, PraeComm has no viable breach claim.

### C. PraeComm Did Not Bargain For Or Receive Requirements-Type Contracts

PraeComm seems to realize the difficulty of its breach position and quickly shifts gears to argue in its opposition that its damages arise not from Contracts 9001 and 9027, but from *future* contracts in the cities in which it expected to install its equipment. Indeed, PraeComm boldly states that its two fixed quantity, fixed price contracts should be interpreted as requirements contracts in which PraeComm will receive all future radio system work in the named cities. Pl. Br. at 29 ("PraeComm reasonably understood that it would fill the Government's requirements in the identified cities and thereby receive all work in those cities. . . .). In reality, there is no "requirements" type language in either contract that granted PraeComm an exclusive right to supply radio equipment and service for some indefinite period into the future.[1]

A requirements contract by definition "calls for the government to fill all its actual requirements for specified supplies or services during the contract period by purchasing from the awardee, who agrees to provide them at the agreed price." See Rumsfeld v. Applied Companies, Inc., 325 F.3d 1328, 1334 (Fed. Cir. 2004); see 48 C.F.R. § 16.503. Yet under PraeComm's requirements theory of damages, it now claims that it was entitled unilaterally to set and charge the United States certain prices for its equipment for years after the installation of its equipment.

As we demonstrated in our motion, PraeComm cannot place contract obligations on the United States above and beyond the terms of the contracts themselves. Nothing in the contracts made PraeComm the sole source future radio equipment provider in any Iraqi city, because nothing in the contracts required the United States or the Iraqi Ministry of Defense to purchase and use PraeComm's radio equipment exclusively and indefinitely in the cities named in the

[1] Interestingly, PraeComm does not disclose the length of the sole-source/requirements periods it believes were conferred by Contracts 9001 and 9027. Yet its damage calculations assume that the phantom requirements contracts had no end, and that it would still be supplying Iraqi police officers even today.

contracts. This indefinite arrangement is not only outside the fixed quantity, fixed price terms of the contracts, but also beyond the authority of any contracting official. To the contrary, the contracts permitted the United States and Iraq to change or update technologies and systems at any time. Therefore, the bulk of plaintiff's claim for damages – over $14 million in lost profits – must fail because it depends on contract terms never negotiated with or agreed upon by the Government.

In the absence of essential terms of price and duration, this Court would have to imply the terms into PraeComm's contracts. Yet the Court has no basis to do so. Generally, "any agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government." Massie v. United States, 166 F.3d 1184, 1188 (Fed. Cir. 1999). For obvious reasons, there can be no requirements contract under circumstances where no one – much less the United States and Iraq – agreed to pay the prices that PraeComm now wants to "charge" as damages. There simply was no such meeting of the minds or mutuality of intent. Absent express terms in Contracts 9001 and 9027 evidencing the parties' intent to create a requirements-type arrangement for a set period of time at agreed-upon prices, the Court has no basis to alter the fundamental fixed quantity, fixed price nature of the PraeComm's contracts. Further, it is well settled in this Court that "an implied-in-fact contract cannot exist if an express contract already covers the same subject matter." Trauma Service Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997); accord Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990).

Finally, PraeComm's argument that Government representations outside the contracts conferred future sole-source arrangements in the named cities raises the parol evidence rule. The rule provides that "a binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them" and precludes the admission of prior contemporaneous evidence to vary the terms of a written agreement. Restatement (Second) of Contracts § 213 (1979). "Where a contract is explicit and its terms unambiguous, the court is not at liberty to search for its meaning beyond the four corners of the instrument itself, and the use of auxiliary tools of contract interpretation, including extrinsic evidence and post-formation circumstances, is impermissible." Huna Totem Corp. v. United States, 35 Fed. Cl. 603, 610 (1996). The parol evidence rule prohibits the use of external evidence to add to modify the terms of a written agreement that has been adopted by the parties as an expression of their final understanding. Peterson-Sharpe Engin. Corp. v. United States, 6 Cl. Ct. 288 (1984). Accordingly, in the absence of an ambiguity, a court will not consider parol evidence in interpreting the terms of an agreement. See e.g., Greco v. Dept. of Army, 852 F.2d 558, 560 (Fed. Cir. 1988); George Hyman Constr. Co. v. United States, 832 F.2d 574, 578-79 (Fed. Cir. 1987); Fausto v. United States, 16 Cl. Ct. 750, 754 (1989); Boehm v. United States, 22 Cl. Ct. 511, 516-17 (1991); King Fisher Marine Service, Inc. v. United States, 16 Cl. Ct. 231, 234 (1989). [2]

Neither of PraeComm's contracts is ambiguous with respect to the fixed quantity and fixed price. Moreover, there is no contract term obligating the United States to do anything

[2] See also FAR Section 2.101, which defines a "contract" to include "commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, **are in writing**." 48 C.F.R. § 2.101.

beyond paying the contract price. For this reason, the Court should not permit PraeComm to vary the terms of its contracts via evidence barred by the parol evidence rule.[3]

**D. The Names Of The Cities In PraeComm's Contracts Are Not Superfluous**

PraeComm next argues that the Government's position that no breach or compensable change occurred renders useless the naming of cities in the contracts. Pl. Br. at 22-23. PraeComm claims that unless this Court interprets the names of the cities in the contracts to place an obligation upon the United States to order PraeComm install the equipment in the named cities, the names of the cities become superfluous. Id. at 24. This is untrue.

The cities named in the contracts were placed there by the United States via its Statements of Work in order to provide the contractor with the locations where it would be performing work. This permitted the contractor to propose a plan to install certain numbers of radios and train users in the named cities. A 144, 154-55. Moreover, the cities told the contractor where its equipment was to be installed so that the contractor could price

---

[3] PraeComm's arguments are strikingly similar to those in Applied Companies v. Harvey, 456 F.3d 1380 (Fed. Cir. 2006), where the plaintiff also contended that an Army representative made sweeping promises not contained in the written contract. The Federal Circuit held that:

> Because there is no ambiguity in Applied's agreement with the Army, there is no role in this case for parol evidence. Applied's counsel asserted at oral argument that Col. Mills not only discussed the idea that later led to this VECP [Value Engineering Change Proposal], but also negotiated this VECP, and Col. Mills offered "uncontroverted" testimony that the Army intended Applied's VECP concept to apply to the entire family of ACs. If Col. Mills intended to include additional AC models within the scope of the VECP, then he should have communicated that intent to the CO, so that it could have been incorporated into the writings. If the contract modifications proferred by the Army failed to state accurately the oral agreement entered into with Col. Mills, Applied should not have agreed to them. Moreover, if the agreement had been ambiguous, which it is not, then the CO – the party specifically tasked by the regulation with entering into an agreement with the contractor regarding VECP scope – would have been the proper Army representative to offer clarification as to the parties' intent. Col. Mills was not a party to any contract.

Applied Cos., 456 F.3d 1380, 1384.

transportation, installation, and training into the contracts. Id. For example, it may cost more for the contractor to perform installation and training work in Fallujah than in Mosul, given the relative distances to the cities from the ports, differences in manpower requirements, and differences in security and stability from one city to the next in the midst of an ongoing shooting war. For these reasons, the names of the cities in Contracts 9001 and 9027 were not useless or superfluous. Overstreet Electric Co., Inc. v. United States, 59 Fed. Cl. 99, 112 (2003). Moreover, the Army was not free to simply change the names of the installation cities; if a change in cities caused an increase in the cost of performance, the Army would be responsible for this additional cost to comply with the change. Of course, in this case the cities were not changed; they were eliminated entirely, resulting in the elimination of all installation and training tasks under the contracts, but certainly no additional work. The Army did not – and could not – "give" whole cities to PraeComm or any contractor in the manner suggested in PraeComm's proferred interpretation of the contracts.

PraeComm also asserts that the alleged "dispute" as to the meaning of the cities in the contracts renders summary judgment inappropriate, and that "the intent of the parties in entering [into] contracts that identify specific cities must be examined." Pl. Br. at 25. This also is not true. This Court has recognized that contract interpretation is an appropriate matter for summary judgment. See L.W. Matteson v. United States, 61 Fed. Cl. 296, 307 (2004), citing Gov. Sys. Advisors, Inc. v. United States, 847 F.2d 811, 812 n.1 (Fed. Cir. 1988). Under general rules of contract interpretation, the Court construes the plain language of the contract and gives reasonable meaning to all parts in context. Hunt Const. Group, Inc. v. United States, 281 F.3d 1369, 1372 (Fed. Cir. 2002). Whether a contract's provisions are ambiguous – that is, susceptible to more than one reasonable interpretation – is a question of law. NVT

Technologies, Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004); Jowett, Inc. v. United States, 234 F.3d 1365, 1368 n.2 (Fed. Cir. 2000). Where a contract is clear and unambiguous, the Court will follow the plain and ordinary meaning of its terms and will not resort to extrinsic evidence to interpret the contract. McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996); see also Beta Sys., Inc. v. United States, 838 F.2d 1179, 1183 (Fed. Cir. 1988) ("[E]xtrinsic evidence will not be received to change the terms of a contract that is clear on its face.").

The plain language of Contracts 9001 and 9027 defies the far-reaching, requirements-type, meaning that PraeComm now seeks to obtain. There is nothing in Contract 9001 suggesting that the parties intended anything other than to fill the Army's "requirement to upgrade UHF radio systems in four cities to provide trunked communications." A 144 (Statement of Work). Contract 9027 admittedly tells offerors that "the system will need to become a long term solution given that the AFRN will not be put into many cities." A 154. However, the intent of Contract 9027 was the same as Contract 9001, but applied to more cities and a greater volume of equipment: "The purpose of this effort is to convert radio systems in 12 cities from standard analog to trunked radio systems. . . ." Id. Under both contracts, the goal was to upgrade police communications to a more useful, more secure network. The plain language of the contracts does not create any long term obligation to maintain PraeComm's equipment in any of the cities; if PraeComm had desired this type of arrangement, it should have bargained for it in the contracts or at least stated its understanding of such an arrangement in its proposals. Instead, the contracts, the referenced statements of work, and PraeComm's proposals are silent on any long term obligation on the part of PraeComm to supply and the Government to purchase equipment beyond the quantities and prices recited in the two contracts themselves.

PraeComm is correct that the intent of the parties is important to interpreting the contracts. Pl. Br. at 25; see PCL Constr. Svcs. v. United States, 47 Fed. Cl. 745, 785 (2000) ("The principal objective of contract interpretation is determining the intent of the parties at the time the contract was signed"), citing Winstar Corp. v. United States, 64 F.3d 1531, 1540 (Fed. Cir. 1995) (en banc), aff'd, 518 U.S. 839 (1996). However, the focus is "the parties' **jointly** held intent": "The subjective, unexpressed intent of one party, or a post-hoc 'interpretation' of what a bidder is said to have believed when entering into a certain type of contract . . . is irrelevant for interpreting the contract." Id. citing Andersen Consulting v. United States, 959 F.2d 929, 934 (Fed. Cir. 1992) and other cases (emphasis added). For this reason, PraeComm's post hoc claim that it intended that the contracts confer open-ended sole-source future contracts for radio equipment at to-be-determined prices is irrelevant. The mutual intent of the parties, as expressed in the clear terms of the contracts, was limited to supplying and installing fixed quantities of radio equipment at fixed prices at fixed locations.

### E. PraeComm's *Winstar*-Based Theory of Lost Profits Does Not Apply In The Context Of Its Fixed Quantity, Fixed Price Contracts

The next claim in PraeComm's opposition brief is that its lost profits claim should not be precluded on summary judgment because a plaintiff is generally allowed to attempt to prove lost profits at trial. Pl. Br. at 25-28. Tellingly, the only cases plaintiff cites for this proposition are Winstar-related cases where the plaintiffs had contracts with the Government far different from the two that PraeComm had with the Army. Id. citing Cal. Fed. Bank FSB v. United States, 245 F.3d 1342 (Fed. Cir. 2001), Franklin Fed. Savings Bank v. United States, 55 Fed. Cl. 108 (2003) and other cases.[4] In the Winstar line of cases, the typical plaintiff bank had a contract with the

[4] Plaintiff cites California Federal Bank for the "black-letter law" proposition that "both the existence of lost profits and their quantum are factual matters that should not be decided on summary judgment if material facts are in dispute." PL. Br. at 26. Here, the issue is **not** the

Government granting certain incentives to acquire a failing savings and loan. See United States v. Winstar Corp., 518 U.S. 839, 848-52 (1996); Glendale Fed. Bank v. United States, 239 F.3d 1374, 1377 (Fed. Cir. 2001). These incentives included agreements allowing the acquiring institution to count "supervisory goodwill" toward its regulatory capital requirements and to amortize the "supervisory goodwill" over a long period of time, usually 30-40 years. Id. The Supreme Court held that the 1989 enactment of the Financial Institutions Recovery, Reform and Enforcement Act breached the promises in the agreements to give the acquiring banks favorable regulatory treatment with respect to "supervisory goodwill." Id. Since the seminal holding in Winstar, numerous similarly situated plaintiffs have brought claims for restitution, reliance damages, and expectancy damages. See, e.g., Old Stone Corp. v. United States, 450 F.3d 1360 (Fed. Cir. 2006); Westfed Holdings v. United States, 407 F.3d 1352 (Fed. Cir. 2005); Glendale, 239 F.3d at 1378.

The reasoning in the Winstar line of cases permitting a plaintiff to prove its lost profits has no application in the context of PraeComm's firm fixed price contracts. The essence of a fixed price contract is that a contractor's profit is built into the contract at inception:

> It is undisputed that the contract was a firm fixed-price services contract. Such a contract provides for a price that is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract**. This contract type places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss.** It provides maximum incentive for the contractor to control costs and perform effectively and imposes a minimum administrative burden upon the contracting parties. . . .

Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1304-05 (Fed. Cir. 1996) (emphasis added); see also 48 C.F.R. § 16.202-1. This concept of profit and incentive in a firm fixed price context

---

"existence" or "quantum" of lost profits, but PraeComm's **entitlement** to lost profits in the first instance. On the question of entitlement, there are no material facts in dispute, and summary judgment is appropriate.

makes sense. PraeComm's lost profits claims would, if permitted by the Court, allow PraeComm to earn a profit beyond the profit already contemplated and built into in its firm fixed price offers. This is important since the general rule in breach cases is to place the injured party only in as good a position as if the breaching party had fully performed the contract. See Hansen Bancorp v. United States, 367 F.3d 1297, 1318 (Fed. Cir. 2004) (non-breaching party may not, through the award of damages, achieve "a position superior to the one it would reasonably have occupied had the breach not occurred.") The Court should not entertain a lost profits theory that necessarily requests the award of an impermissible windfall. Id.

### F. The Lost Profits Claimed By PraeComm Are From "Collateral Undertakings," Not The Contracts In Question

As we demonstrated in our motion for summary judgment, PraeComm cannot establish any lost profits with reasonable certainty because its claim depends on unknown contracts in unknown cities among unknown parties for an unknown quantity of equipment at unknown prices over an unknown period of time in the future. Under these circumstances, PraeComm cannot establish lost profits with reasonable certainty. See Indiana-Michigan Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005); San Carlos Irrigation & Drainage Dist., 111 F.3d 1557, 1563 (Fed. Cir. 1997) (recovery for remote, consequential, or speculative damages not permitted).

Moreover, PraeComm's claimed lost profits do not "flow from the contract that is the subject of the lawsuit"; instead, they hinge upon "independent and collateral undertakings," namely future sole-source contracts. Precision Pine & Timber, Inc. v. United States, 72 Fed. Cl. 460, 471 (2004). However, the Federal Circuit has held that lost profits are not recoverable when they emanate from "profits lost on transactions not directly related to the contract that was breached." Wells Fargo Bank N.A. v. United States, 88 F.3d 1012, 1022-23 (Fed. Cir. 1996),

citing Roberts v. United States, 18 Cl. Ct. 351, 358 (1989). The Wells Fargo decision disallowing lost profits is instructive. In that case, the Court of Federal Claims had awarded over $10 million in interest on loans that Wells Fargo claimed it could not make because of the Government's breach in not issuing a loan guarantee. Wells Fargo, 88 F.3d at 1018. The Federal Circuit reversed the award, holding that "Wells Fargo's loss of interest on additional loans it allegedly could have made had there been no breach is 'too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit.'" Id. at 1023, quoting Ramsey v. United States, 121 Ct. Cl. 426, 101 F. Supp. 353 (1951). The Federal Circuit quoted and agreed with the reasoning in Ramsey that there can be no entitlement to lost profits where:

> the corporation's claim is not for the anticipated profits of the contracts in question, but is a claim for the anticipated profits of its entire business enterprise. The lost profits of these collateral undertakings, which the corporation was unable to carry out, are too remote to be classified as a natural result of the Government's delay in payment . . . . "[T]here is a distinction by which all question[s] of this sort can be easily tested. If the profits are such as would have accrued and grown out of the contract itself, as the direct and immediate results of its fulfillment, then they would form a just and proper item of damages, to be recovered against the delinquent party upon a breach of the agreement . . . . But if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit."

Ramsey, 101 F. Supp. at 357-58 (quoting Myerle v. United States, 33 Ct. Cl. 1, 26 (1897)); see also Cal. Fed. Bank FSB v. United States, 245 F.3d 1342, 1349 (Fed. Cir. 2001) (citing Wells Fargo) and Precision Pine, 63 Fed. Cl. 122, 137 (2004) (same).

Like the plaintiffs in Wells Fargo and Ramsey, PraeComm seeks lost profits not on the contracts it claims the Army breached, but on transactions independent of and collateral to those

contracts. Damages calculated on such independent and collateral contracts, as a matter of law, are "too uncertain and remote." Id. Indeed, PraeComm and this Court can only speculate as to (1) how many PraeComm radios and parts the Army (and the Iraqi Ministry of Interior) would have ordered under the mythical sole-source arrangement in various cities; (2) how much the Army (or the Iraqi Ministry of Interior) would have agreed to pay for the equipment and parts; or (3) how long the sole source arrangements would have existed, if at all, before being replaced by the larger AFRN network system that is now in place. This uncertainty is fatal to PraeComm's claim for lost profits, even if its profits were not (as explained above) already inherently capped by the terms of its firm fixed price contracts.

## II. By Definition, A Deductive Change Cannot Be A Compensable Change

Similar to its defense of its breach claims, PraeComm's opposition does little to salvage its claims of "constructive change." Instead, PraeComm responds by parroting the claim from its complaint that the Army's decision not to order PraeComm to install its equipment was a "cardinal change" or "constructive change" to the contracts. Pl. Br. at 28-31. The only new thought offered in response to our motion is that summary judgment is inappropriate because the Court should hold a trial to determine the exact nature of the change to performance. Id.

There are no material issues in dispute on this point: the parties agree that the change to contract performance occurred when the Army stored the radio equipment in a warehouse instead of directing its immediate installation and use. PraeComm contests nowhere in its opposition that the change was purely deductive, reducing PraeComm's cost of performance under both contracts. This fact is fatal to PraeComm's related theories of "cardinal change" and "constructive change," doctrines that PraeComm appears to acknowledge turn upon work performed outside of the contract with a corresponding increase in performance costs. See Pl.

Br. at 30-31, citing this Court's recent decision in M.A. DeAtley Constr., Inc. v. United States, 75 Fed. Cl. 575 (2007) ("A constructive change occurs '**where a contractor performs work beyond the contract requirements**, without a formal order under the Changes Clause, either due to an informal order from, or through the fault of, the government.'" (citations omitted) (emphasis added). Indeed, a cardinal change "occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for." AT & T Communications, Inc. v. WilTel, Inc., 1 F.3d 1201, 1205 (Fed. Cir. 1993) quoting Allied Materials & Equip. Co. v. United States, 215 Ct. Cl. 406, 569 F.2d 562, 563-65 (1978)). Further, a "constructive change" under the CDA only entitles the contractor to an equitable adjustment in the contract price for the costs incurred to comply with the change. See, e.g., Granite Constr. Co. v. United States, 962 F.2d 998, 1008 (Fed. Cir. 1992); Travelers Cas. & Sur. Co v. United States, 74 Fed. Cl. 75 (2006). Here, PraeComm does not contest that there was no change to the contracts that required PraeComm to perform additional work or incur increased costs. We are aware of no case agreeing with PraeComm's novel theory of constructive change – an equitable adjustment for changes that reduce the contractor's work and costs – and PraeComm has cited none in its opposition. In the absence of additional costs, PraeComm's reliance upon the "cardinal change" and "constructive change" doctrines is misplaced. Ace Constructors, Inc. v. United States, 70 Fed. Cl. 253, 274-75 (2006) ("proper measure of an equitable adjustment is the *extra costs* incurred by the contractor, if those *additional costs* are reasonable") (emphasis added).

Plaintiff also fails to respond to the argument in our motion for summary judgment that the "constructive change" doctrine likely does not apply where, as here, the contracts do not have a changes clause permitting an equitable adjustment for a unilateral change. See Def. Mot. for

Summm. J. at 25, citing Int'l Data Prods. v. United States, 70 Fed. Cl. 387, 402-03 (2006) (constructive change and equitable adjustment held impossible as a matter of law because of absence of changes clause: "the concepts of constructive change, equitable adjustment and cardinal change have no applicability to this case.")

Finally, PraeComm has no response to our observation that its claim at best alleges a constructive termination for convenience prior to installation of the radio equipment. Mot. for Summ. J. at 26-28. As we explained in our motion, the Army never unilaterally changed the contracts, constructively or otherwise, except *not* to direct PraeComm to perform the work remaining on the contracts, namely installation and training. Id. The termination for convenience clauses incorporated into both Contracts 9001 and 9027 limit PraeComm's recovery to: (1) "a percentage of the contract price reflecting the percentage of work performed prior to the notice of termination"; and (2) "reasonable charges" that "have resulted from the termination." See 48 C.F.R. §§ 12.301(b)(3) and 52.212-4(l). Because PraeComm has already been paid the full contract price and has never asserted that it incurred additional costs to perform the contracts, PraeComm cannot establish entitlement to any damages for the wrong it alleges. See White Buffalo Constr., Inc. v. United States, 52 Fed. Cl. 1, 4-5 (2002) (contractor's recovery following a termination of a fixed-price contract for the convenience of the Government is capped at an amount equal to the contract price, less payments already received).

## III. The Army Did Not Violate Its Implied Covenant Of Good Faith And Fair Dealing

PraeComm asserts in the final section of its opposition that the Government is not entitled to summary judgment on the claims of breach of the implied covenant of good faith and fair dealing. Pl. Br. at 31-32. PraeComm states that "the Government's misrepresentation and withholding of facts" sufficiently states a claim and raises genuine issues of material fact. Id.

As to the specifics of the alleged misrepresentations, PraeComm claims that (1) the Army misrepresented that "it would install PraeComm's equipment in accordance with the contracts"; (2) the Army misrepresented that PraeComm "would be the long term supplier of FRN systems"; and (3) the Army "acted in bad faith by accepting PraeComm's deeply discounted prices, free equipment, and upgrades" with knowledge that PraeComm expected to become the long term provider of FRN equipment in Iraq. Id.

These specific acts of misrepresentation and bad faith now alleged in support of PraeComm's implied covenant claims are not alleged in the complaint at all. See Compl. ¶¶ 92-100 (Count V) and 101-110 (Count VI). In fact, the allegations in the complaint refer only to the Army's decision not to install PraeComm's equipment in the named cities and to install the AFRN system in those cites instead; PraeComm never alleged that the Government made any misrepresentations. Id. This suggests that PraeComm agrees with the argument in our motion for summary judgment that the facts in the complaint, even when taken in the light most favorable to plaintiff, do not allege a breach of the Government's implied covenant of good faith and fair dealing. See Mot. for Summ. J. at 28-34.

In any event, PraeComm's new allegations are not helpful to avoiding summary judgment. PraeComm has not offered any evidence that the Army misrepresented anything related to the AFRN system or the contracts in question, much less that the Army acted with malice or intent to injure by accepting PraeComm's offer to supply and install its radio equipment. See S. Cal. Edison v. United States, 58 Fed. Cl. 313, 325 (2003).[5] Indeed, PraeComm has no evidence that the Army had actual knowledge of the alleged "deeply discounted" prices PraeComm claims it offered in expectation of receiving follow-on sole-source

[5] Plaintiff appears to have drawn its new allegations of bad faith from the Southern California Edison case verbatim.

contracts. Tellingly, PraeComm cites or quotes no specific documents in its opposition to support these allegations, aside from vague references to equally-unilluminating answers to several discovery requests. A party's burden on summary judgment is discharged by "showing"– that is, merely pointing out to the Court – that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

While it is generally recognized that every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement, see Def. Mot. for Summ. J. at 29-30, "[t]he law does not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of wished-for legal duties". Comprehensive Care Corp. v. RehabCare Corp., 98 F.3d 1063, 1066 (8th Cir. 1996). In this case, PraeComm now wishes that its contracts promised far more than they did. However, the Federal Circuit has held that "implied covenants of good faith and fair dealing are limited to assuring compliance with the express terms of the contract and cannot be extended to create new obligations not contemplated in the contract." Bradley v. Chiron Corp., 136 F.3d 1317, 1326 (Fed. Cir. 1998); State of Alaska v. United States, 35 Fed. Cl. 685, 704 (1996), aff'd, 119 F.3d 16 (Fed. Cir. 1997) (Table) ("The implied obligation of good faith and fair dealing must attach to a specific substantive obligation, mutually assented to by the parties.") Given the absence of express terms promising PraeComm sole-source arrangements in the named Iraqi cities, the Army did nothing to deprive PraeComm of its "negotiated contract benefits" or interfere with the benefit of its bargain. Nat'l Australia Bank v. United States, 452 F.3d 1321, 1324-25 (Fed. Cir. 2006); La Gloria Oil & Gas Co. v. United States, 72 Fed. Cl. 544, 572 (2006); Essex Electro Eng'rs v. Danzig, 224 F.3d 1283, 1291 (Fed. Cir. 2000) ("Every contract, as an aspect of good faith and fair dealing, imposes an implied obligation 'that neither party will do anything that will hinder or delay the other party in

performance of the contract.'"). PraeComm received all of the benefits promised under its contracts.

## CONCLUSION

The material facts in this case are not in dispute: plaintiff delivered the radio equipment and the Army paid the full contract price under both contracts. The only change to performance was deductive in that the Army elected not to order PraeComm to install the equipment and train end-users. PraeComm did not request or obtain terms in either contract promising PraeComm the indefinite sole-source arrangements to which it now believes it is entitled. For these reasons, we respectfully request that the Court enter judgment in favor of the United States.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Gregg M. Schwind
GREGG M. SCHWIND
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Washington D.C. 20530
Tel: (202) 353-2345
Fax: (202) 514-8624

OF COUNSEL:

KEVIN ROBITAILLE
Litigation Attorney
U.S. Army Litigation Division
901 N. Stuart Street
Arlington, VA 22203

May 16, 2007

Attorneys for Defendant